Argued July 6, reversed July 20, rehearing denied September 7, 1915.

## HOLMBERG v. JACOBS.

(150 Pac. 284.)

**Master and Servant—Injury to Servant—Allegation if Negligence—Proof.**

1. Where the complaint, in an action for injuries to a cook from the explosion of a gas stove, alleged that the explosion was due to defects in the stove, evidence that the burners had been lighted at least 20 minutes before the explosion did not authorize a recovery by plaintiff; it being incumbent on plaintiff, not only to establish the happening of the accident, but also that it happened on account of the negligence alleged in the complaint.

**Evidence—Judicial Notice—Gas—Explosion.**

2. In an employee's action for injuries from the explosion of a gas stove, the court will take judicial notice that gas used for fuel is so inflammable that the moment a flame is applied it will immediately ignite with an explosion, if present in any considerable volume.

[As to judicial notice, see note in 89 Am. Dec. 663.]

Evidence—Opinion Evidence—Hypothetical Question—Basis.

3.  The answer elicited in response to a hypothetical question pro-
pounded to a witness on cross-examination was not available as evi-
dence, where it was not based on evidence corresponding with the
hypothesis advanced.

[As to hypothetical questions which may be put to expert, see
note in 53 Am. Rep. 307.]

Trial—Nonsuit—Evidence.

4.  Where the testimony for plaintiff, in a personal injury case,
leaves the cause of the accident to mere speculation, a nonsuit should
be entered.

From Multnomah: THOMAS J. CLEETON, Judge.

Department 1.    Statement by MR. JUSTICE BURNETT.

This is an action by Eva Holmberg against Fred A.
Jacobs.

The plaintiff was in the service of the defendant
as a cook from July 11 to 13, 1913. She says he fur-
nished a gas stove to be used in her employment.    She
then alleges:

"That this defendant carelessly and negligently al-
lowed the said stove to become in a defective, dilapi-
dated and dangerous condition, and the burners, flues
and gas-pipes in the said stove to become so burned,
rusted and corroded that gas would escape and accumu-
late in the said stove, making the same dangerous and
unsafe when any person should attempt to light and
operate the said stove; that the said stove was in a
dangerous and unsafe condition as aforesaid on the
13th day of July, 1913, and this defendant knew, or
by the exercise of reasonable care and prudence could
have known, that the said stove was in a dangerous and
unsafe condition; that this plaintiff did not know of
the said danger on the 13th day of July, 1913; that, in
pursuance of the duties of her employment as cook for
this defendant, this plaintiff, on the 13th day of July,
1913, had lighted and was attempting to operate the
said gas stove and to use the same for the purpose of
cooking, but owing to the defective condition of the
said stove, and an accumulation of gas resulting there-

from, an explosion of gas ensued, causing great injury to plaintiff.''

These quoted averments are traversed by the answer. The remainder of the complaint relates to the nature of her injuries and consequent damages. The court denied a motion for a nonsuit made by the defendant at the close of plaintiff's case, and the trial resulted in a verdict and judgment against him, from which he appeals. REVERSED. REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. W. B. Shively, Jr.*

For respondent there was a brief over the names of *Messrs. Benson & Benson* and *Mr. Hamilton Johnstone,* with an oral argument by *Mr. B. M. Benson.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The sole question presented for our consideration is whether the court erred in refusing the motion for a nonsuit. The only evidence about how the accident happened is that of the plaintiff herself. She testifies that she began her work for the defendant on July 11th. She says:

''I got there in the morning and prepared one meal, luncheon, discovered the stove, what is in a bad condition, didn't do the work, didn't cook or bake. After the meal was over, goes to Mrs. Jacobs, tells her, 'There is something the matter with the stove; it do not work satisfactory'; and she says to me, 'I have sent for the man already to come and attend to it.' The man came later.''

She states he came and examined the stove that day; returned the third day and put in new burners. Speak-

ing of the condition of the stove before the repairs were made, she said, in substance, that the pipes and burners of the stove were rusty, dirty and corroded; that the burners appeared to be clogged, as well as rusty and corroded. She says the repair man put in the new burners about 3 o'clock in the afternoon, but she gives no account whatever of their condition, whether good or bad. She did not use the stove after that until about 6 o'clock in the evening of the same day. Concerning the accident, she states:

"The dinner was prepared. I was going to bake the rolls. I went to make dessert at half-past 6, lit the oven for to get my oven hot.

"Q. At what time?

"A. At 6 o'clock; let it burn there for 10 minutes or 20 minutes, opened the oven door to see if the oven was warm enough to receive my biscuits. It wasn't. I closed the door, let it stay there for some minutes longer, opened the door again, and still it was not warm.

"Q. That is twice.

"A. And then in a few minutes I put my biscuits in. They were there for 7 minutes. I opened the oven door, and a terrible explosion and the flames leaped around .me."

She stated there were two burners under the oven, and, in several places in her testimony, insisted that they were both lighted. On cross-examination she was asked:

"How many years' experience have you had with a gas stove?

"A. For the last 20 years.

"Q. You say this stove was in a very bad condition when you looked at it; you say it was rusty?

"A. I was there for one meal when I reported the ill condition of the stove.

"Q. To whom did you report the ill condition?

"A. To Mrs. Jacobs.

"Q. And what did you tell her?

"A. This stove will not stew or bake satisfactory and something had to be done to it.

"Q. Did you tell her anything else at that time?

"A. No."

In another part of her cross-examination she was asked:

"Just tell the jury how you lit the oven (these burners) at the time this accident happened.

"A. The oven was lit and had been burning for 20 minutes before the accident happened.

"Q. It was burning?

"A. For 20 minutes before the accident.

"Q. Are you sure it was 20 minutes?

"A. Yes, because I watched the clock."

In answer to a question by a juror, she said:

"Wait a minute. It burned for 10 minutes, and I opened the oven door to find out if my oven was warm enough to put in my rolls, and it was not warm enough to put in my rolls, so I closed the oven door and waited for the heat to increase, and I opened the oven door, and still it wasn.'t quite warm enough, and I closed it again, and I opened it again and put in my rolls, and the rolls were in for 7 minutes, and then I opened the door, and that is when the explosion happened so I got this terrible burn."

The negligence charged upon the defendant is:

"That this defendant carelessly and negligently allowed the said stove to become in a defective, dilapidated and dangerous condition, and the burners, flues and gas-pipes in the said stove to become so burned, rusted and corroded that gas would escape and accumulate in the said stove, making the same dangerous and unsafe when any person should attempt to light and operate the said stove."

A fair construction of this allegation is that the stove was in such a dilapidated condition that, although the flames used in cooking were extinguished,

the gas continued to escape into the oven, so that, on lighting it again, the accumulated volume of gas would be immediately exploded. In other words, the substance of the charge of negligence is that the stove was in such a state that the mere attempt to light it would at once set off an explosion and not that the blast would occur after the gas had been burning for some time. On the hypothesis that the stove leaked, the testimony given by the plaintiff shows the gas must have been gathering in the oven for 3 hours, or from the time the new burners were installed at 3 o'clock until she lighted the oven at 6 o'clock; and further, if her testimony is true, the explosion would have occurred the instant the match was applied; but, as a matter of fact, as she states, both burners had been lighted at least 20 minutes before the blast went off. There is no evidence to show any smell of escaping gas prior to lighting the oven. Neither is there anything to disclose that there was any way for it to escape into the oven, except through the pilot light and the two burners which had been put in only 3 hours before. There is nothing showing that there were any pipes in the oven, and the record is utterly silent as to whether there was any defect in the new burners in use when the accident is said to have occurred.

2. The averment of negligence must be proven as laid, according to the familiar rule that the testimony must correspond with the allegations of the complaint: *Knahtla* v. *Oregon Short Line Ry. Co.*, 21 Or. 136 (27 Pac. 91). The charge of negligence and the narration of the mishap do not correspond with each other. The mere occurrence of the injury furnishes no cause of action. Under the rule of the evidence corresponding with the allegations, it is incumbent upon the

plaintiff, not only to establish the happening of the accident as stated, but also that it happened on account of the negligence alleged in the complaint. Although she testified that the pipes were rusty and corroded, the plaintiff did not show in any way that rust or corrosion was inflammable or that they would cause a sudden detonation of the fuel vapor. It cannot be fairly said that gas was continually escaping into the oven for 3 hours, and that, upon being lighted, the explosion did not occur until 20 minutes afterward, for it is a scientific fact of which the court will take notice that gas ordinarily used for fuel is so inflammable that the moment a flame is applied it will immediately ignite with an instant explosion, if it is present in any considerable volume. According to the plaintiff's testimony, she opened the oven 3 different times after it was lighted and before the accident happened. It cannot be rationally deduced that, under the circumstances, the disruption arose from any previously accumulated gas. The only way it could get into the oven, so far as it appears from the testimony, was through the two new burners recently installed and the pilot light by which they were ignited. She insists, however, that both these burners were lighted; and, this being true, they necessarily must have consumed the gas passing through them.

The plaintiff counts somewhat upon the cross-examination of experts offered by the defendant. One hypothetical question was this:

"Mr. Patterson, if, as a matter of fact, from leaks either from the burners or from other pipes, or the stopping of the vent-pipe failing to carry away leaking gas, gas had escaped into the oven, the oven door being closed, is it possible that in the course of time, with the gas leaking into the oven, and the burners under-

neath burning at full flow for several minutes, that constantly increasing heat added to the constantly accumulated gas might cause an explosion, just the same as if flame were brought to the gas? Is that impossible under those conditions?

"A. No, sir."

This interrogatory is not applicable to the case, for the reason that there was no evidence of any stopping of the vent-pipe nor of any leak from any pipe or any way in which the gas could get into the oven, except through the lighted burners. To be available, a hypothetical question must be based upon some 'other evidence in the case corresponding with the hypothesis advanced. In short, having alleged the negligence to consist in allowing the stove to become so out of repair that it would leak gas to such an extent as to make it dangerous to attempt to light it, the plaintiff must establish that averment as stated, and the requirement is not met by proving that, after the stove had been lighted for more than 20 minutes, an explosion occurred.

4. Such a state of the testimony leaves the jury merely to speculate upon the actual cause of the accident, and the authorities are unanimous to the effect that a recovery cannot be made to depend upon pure speculation. The plaintiff, having assumed the burden of proof, must make her case as laid in her complaint. There is a gap both in her pleadings and her testimony between the alleged negligence and the injury of which she complains.

The judgment of the Circuit Court is reversed and the cause remanded, with directions to enter a judgment of nonsuit.    REVERSED.    REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.