The plaintiff alleged that the defendant owned and operated a telephone system in the town of Dunn and that he was a subscriber and patron, having in his dwelling a telephone in good working order; that *Page 198 
the defendant represented to the public that service could be had at any time, day or night; that the town had a fire alarm and a well-equipped fire department with apparatus and skilled firemen who were prompt in responding when the alarm was sounded; that the plaintiff owned an 8-room house, situated near his residence, on the roof of which he discovered a small fire about three o'clock in the morning of 12 March, 1925; that he made diligent effort for 15 or 20 minutes to get a response from the central office of the defendant for the purpose of notifying the local fire department and giving the fire alarm, but was unable to get an answer to his call or any communication with the fire department; and that in consequence his 8-room building was destroyed by fire. With respect to the want of due care the material allegations are these: (1) Through the negligence of the defendant the plaintiff was prevented from getting in communication with the central office. (2) By reason of such negligence, as set forth in the complaint, the plaintiff suffered the entire loss of his building. (3) The fire company did not get to the house until thirty or forty minutes after the plaintiff had discovered the fire and if the company had arrived within twenty or twenty-five minutes the house would have been saved. (4) If the defendant had promptly answered the plaintiff's call the alarm would have been given and the fire department could have put out the fire; and that the defendant's negligent failure to keep a competent person at the switchboard and to communicate with the plaintiff was the proximate cause of the loss.
The action, it will be noted, is laid in tort and negligence is the imputed wrongful act. It is contended by the defendant that several of the plaintiff's allegations, especially those relating to the proximate cause of the loss, are inferences or conclusions not deducible from the substantive facts and not admitted by the demurrer. It is also insisted that the circumstances alleged were not such as to have admonished the defendant that its omission would probably result in injury to the plaintiff, and moreover that the essential proximate connection between the alleged negligence and the alleged loss is not susceptible of satisfactory proof.
When its sufficiency is challenged by demurrer a complaint will be sustained if its allegations constitute a cause of action, or if facts sufficient for this purpose are logically inferable therefrom under a liberal construction of its terms. But a demurrer, which raises an issue of law, is construed as admitting only relevant facts well pleaded and *Page 199 
relevant inferences of fact readily deducible therefrom and not as admitting conclusions or inferences of law or matters of evidence or of facts controverting those of which the Court must take judicial notice.Price v. Price, 188 N.C. 640; Foy v. Foy, ibid., 518; Sexton v.Farrington, 185 N.C. 339; Sandlin v. Wilmington, ibid., 257; Bank v.Bank, 183 N.C. 463; Hartsfield v. Bryan, 177 N.C. 166; Crane Co. v. L. T. Co., ibid., 346; Board of Health v. Comrs., 173 N.C. 250; Foy v.Stephens, 168 N.C. 438.
In Bank v. Bank, 183 N.C. 463, it was alleged that the plaintiff had suffered loss through the defendant's negligent failure in issuing checks to use safety paper and certain protective devices and that the defendant's negligence was the proximate cause of the loss. In the opinion of the CourtMr. Justice Hoke said that the general averments of negligence and proximate cause imputing liability to the defendant were not sufficient to sustain the action upon a demurrer to the complaint. And in Chancey v. R.R., 174 N.C. 351, the plaintiff alleged that the defendant had overcrowded the car for which he had purchased a ticket and had failed to light it properly and that by reason of the defendant's negligence he had been assaulted and robbed. A demurrer was sustained. Holding that the imputed act of negligence must be the causa causans of the injury or loss,Mr. Justice Walker said: "The assault is not described with any particularity, so that we can understand how it came about, and seems to be only the pleader's conclusion as to its character, and not a statement of the facts so as to afford us an opportunity to form an opinion as to what caused it." It is an elementary rule of pleading that a demurrer does not admit the pleader's conclusions or inferences and the Court may not be denied the right to judge for itself whether the plaintiff's allegations are sufficient to warrant a submission to the jury of the question of proximate cause. Accident Co. v. Bates, 74 Ill., App. Court, 335; Greeff v.Assurance Society, 73 A.S.R. (N. Y.), 659; Dubois v. Hutchison,40 Mich. 262 . The bare statement, then, that the defendant's negligence was the proximate cause of the plaintiff's loss, unsupported by allegations of sufficient particularity to enable us to discover a causal relation between the negligent act and the loss is not sufficient. It is therefore essential that we ascertain from the complaint whether such causal relation is proximate or too remote to support the action.
In Penn v. Telegraph Co., 159 N.C. 306, it is said that the rule in actions ex delicto is that the damages to be recovered must be the natural and proximate consequence of the act complained of; and in several cases it has been held that the proximate cause of an event is the efficient cause, that which is natural or continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the *Page 200 
result would not have occurred. Goodlander Mill Co. v. Standard Oil Co., 63 Fed., 400; Ward v. R. R., 161 N.C. 179; Hardy v. Lumber Co.,160 N.C. 113. True, the primary cause may be the proximate cause of the injury though it operate through successive instruments or agencies, the question being whether there is an unbroken connection between the wrongful act and the injury complained of — a continuous operation. 1 Thompson on Negligence, 2 ed., sec. 52; R. R. v. Kellogg, 94 U.S. 469,24 Law Ed., 256. The celebrated Squib case is a fair illustration of this doctrine. The defendant threw a lighted squib into the market house when it was crowded with those who bought and sold. The fiery missile came down on the shed of a vender of gingerbread who, to protect himself, caught it and threw it away. It then fell on the shed of another ginger-bread seller who passed it on in the same way till at last it burst in the plaintiff's face and put out his eye. The plaintiff brought suit against the defendant who was held answerable on the ground that he was presumed to have contemplated all the consequences of his wrongful act. Scott v. Shepherd, 2 W. Blackstone, 892. Other illustrated cases are cited by Thompson in sec. 53. This, however, is not the present case. Here no active interposing causes were set in motion by the alleged negligent act of the defendant, the imputed negligence being the defendant's failure to perform a legal duty. No doubt the failure to perform a legal duty may be the proximate cause of an injury; but the causal connection between the negligent act and the injury must in fact and in law be primary or proximate, and free from such contingencies as make it remote and indeterminable. There must be a direct relation between the cause and the effect, between the wrong and the injury. We are therefore confronted with the question whether the defendant might have foreseen that the plaintiff's injury was remote and whether there were intervening contingencies which rendered the result of the negligent act entirely speculative and the proximate cause of the loss impossible of satisfactory proof.
These questions are considered in Lebanon Telephone Co. v. Lumber Co.,131 Ky. 718, 18 Ann. Cas., 1066. There, as here, a demurrer was filed. The facts are almost identical with those in the case at bar. Mr. JusticeLassing wrote the opinion from which we quote: "An analysis of the petition shows that it charges that, if a connection had been promptly established between the watchman and the fire department, the man in charge there would have promptly answered his call, and would have promptly sounded the alarm by ringing the fire bell; that the members of the fire department would have heard the fire bell, when rung, and would have promptly answered the call, and would have reached the fire at least thirty minutes sooner than they did, and before it had spread from the boiler house to the main buildings; that after *Page 201 
having reached the fire the fire department would have put it out before it had communicated to the main buildings, and the plaintiff would have suffered comparatively no loss. Each of these five independent links must be forged into a chain in order to connect the negligence of the defendant's operator with plaintiff's loss. It must be presumed that the watchman in the engine house was awake and at his post of duty ready to answer the call immediately upon receipt of the notice of the fire; that he would at once have sounded the alarm by ringing the bell; that upon the ringing of the bell members of the fire department, whether paid or volunteers, would have heard the alarm and promptly responded to the call, and would have reached the scene of the fire before it had spread to the main building. The fire-fighting apparatus must have been in perfect working order, and the fire department must have succeeded in confining the fire to the boiler room, and put it out before it had spread to the other buildings. Now, when it is considered that each of these separate agencies is wholly independent of the other, and none of them under the direction or subject to the control of the defendants, it is readily seen that, in order to hold that the negligence complained of was the proximate cause of the injury or loss, a series of presumptions must be indulged in. . . . We know that fire fighting, under the most favorable circumstances, and with the most approved appliances and modern machinery, is an uncertain and frequently disastrous business. No two fires are alike, and it is indulging in the purest speculation to try to figure what would have been done under other conditions and different circumstances."
The Court concluded that the facts upon which a recovery was sought were entirely too speculative and remote and the petition was dismissed.
Discussing a similar question in Volquardsen v. Telephone Co., 126 N.W. (Ia.), 928, Mr. Justice Ladd, used this language: "Suppose the connection at the central office had been made promptly, would the fireman in charge of the fire station have responded promptly and promptly have rung the fire bell? Would the members of the department have heard and promptly have repaired to the scene? Was the apparatus for extinguishing the fire in working order and the water supply accessible and sufficient? Would all of these intervening agencies have operated harmoniously and efficiently and with such promptness as to have put out the flames in time to have avoided a total loss? Manifestly these are matters of speculation, and yet all this must be assumed if the loss is to be traced to defendant's negligence. Each of these independent agencies necessarily must be linked together in a line of causation in order to connect it with the loss. None of them were under the direction or control of the telephone company. Moreover, how far the *Page 202 
fire had spread at the time the firemen would have been likely to have reached the scene had the connection been promptly made is left by evidence a matter of speculation merely. And then there are the weather conditions and the character of the material to be taken into account. After the experience of ages, fighting fire, even with modern machinery and apparatus, is precarious business, and uncertain in its results." See, also, Southwestern Telephone Co. v. Solomon, 117 S.W. (Tex.), 214; Evansv. Telephone Co., 135 Ky. 66, 135 A.S.R., 444; Ins. Co. v. Tel. Co., 154 N.W. (Ia.), 874. Note 10 A.L.R., 1459.
The complaint proceeds upon the supposition that all the agencies intervening between the negligent act and the destruction of the plaintiff's building would necessarily have worked out with perfect efficiency. This of course is an assumption, or inference, or conclusion which, under the authorities we have cited, the demurrer does not admit.
In support of his contention the plaintiff cites Hodges v. R. R.,179 N.C. 566, in which the demurrer was overruled. A careful perusal of the complaint and of the opinion will disclose material differences between that case and this. There it appeared that the telephone line extended from Tuckerdale to the offices of two physicians whose services had previously been engaged and who were expected when called to go to the plaintiff's house to administer to his wife at the birth of a child; that the plaintiff had made repeated attempts to get in communication with the physicians and had failed because the defendant in breach of a statute had wilfully cut the wire; and that the physicians would have responded had they been called. There was an allegation in the complaint that if the wire had not been cut the physicians could have arrived in time to have saved the patient's life. The defendant demurred on the ground that the damages were remote and that the defendant's negligence was not the proximate cause of the death.
That case and this may be differentiated. There, it may be assumed, the defendant had in mind the probable result of its wilful act. Also, a definite contract had been made with the physicians; and plaintiff's allegation that if the wire had not been cut the patient's life might have been saved was treated in the opinion as broad enough to admit proof that as a matter of science or human experience the physician could have administered remedies which, in all reasonable probability, would have prevented death. None of these elements appears in the case before us.
The judgment is
Affirmed. *Page 203