C. J. FLEMING AND CAPITAL FIRE INSURANCE COMPANY, CITIZENS
INSURANCE COMPANY OF NEW JERSEY, CONTINENTAL INSUR-
ANCE COMPANY, HOME INSURANCE COMPANY AND AMERICAN
NATIONAL FIRE INSURANCE COMPANY, v. CAROLINA POWER &
LIGHT COMPANY.

(Filed 11 October, 1950.)

1. **Negligence § 16—**

Mere characterization of an act or course of conduct as negligent is
insufficient, but plaintiff must allege the facts constituting negligence in
order that the court may see whether there has been a breach of duty.

2. **Electricity §§ 8, 12—**

Mere allegation that defendant electric company permitted current to
pass through its wires in such volume as to set fire to plaintiff's property
is insufficient to allege negligence on the part of the power company in
this respect, since an electric company necessarily permits current to flow
through its wires in sufficient volume to cause fires under some conditions.

3. **Same—**

Where the case is tried upon the allegations and evidence on the theory
that defendant power company was negligent in failing to cut off the
electricity after notice of dangerous conditions at the *locus*, and there is
no allegation that the fire resulted from an excessive or unusual flow of
electric current under defendant's control through the wires into plaintiff's
property, the trial court's submission of the case to the jury upon the
theory of negligence alleged in the complaint, without the submission of
the question of defendant's liability under the doctrine of *res ipsa loquitur*,
will not be held for error.

4. **Appeal and Error § 8—**

Appellant's exceptions will be considered in the light of the theory of
trial in the lower court.

5. **Appeal and Error § 39e—**

The exclusion of testimony that defendant's employee was heard to
"grunt" upon observing the conditions existing at the *locus* cannot be held
for error when it is not made to appear what meaning or significance, if
any, was to be attribtued to this gutteral noise.

6. **Same—**

The admission of testimony over objection cannot be held prejudicial
when the same testimony has theretofore been admitted without objection.

APPEAL by plaintiffs from *Carr, J.,* June Term, 1950, of VANCE.
No error.

This was an action to recover for the loss by fire of plaintiff Fleming's tobacco warehouse. It was alleged the fire was caused by the negligence of the defendant Power & Light Company. To this action the above named fire insurance companies, which had paid insurance on the building, were made parties plaintiff.

The procedural questions discussed when this case was here at Fall Term, 1948, reported in 229 N.C. 397, and on rehearing, reported in 230 N.C. 65, are not now pertinent to the consideration of plaintiffs' appeal from an adverse judgment on the merits.

On and before 22 February, 1947, plaintiff Fleming was the owner of a warehouse for the auction sale of leaf tobacco, known as the "High Price Warehouse." This warehouse was located in the business district of the City of Henderson on the north side of Montgomery Street, adjoining on the west the Vance Hotel and a theater building, and was separated from the hotel by an alley. The warehouse covered more than 52,000 square feet of floor space, and was constructed in the main of upright wooden timbers on a brick foundation, covered on the outside by corrugated sheet iron. The roof was of tin, the floor of wood, and the driveway of cement. The lighting fixtures and wiring inside the building were installed and maintained by plaintiff Fleming, and the electric current was furnished under contract by defendant Light Company, and delivered from defendant's service wires into a conduit attached to the outside of the west wall of the warehouse. Thence the current passed through the wall, into and through an electric meter inside the warehouse and to the plaintiff's electric fixtures which consisted of droplights and an icebox. The warehouse was not at this time in use for the sale or storage of tobacco but was being used as an office. In the warehouse, fronting on Montgomery Street 70 feet, was a storeroom extending back 48 feet. This belonged to plaintiff Fleming, and was heated by an oil stove with an oil reservoir inside the building on the wall.

The defendant maintained an electric power sub-station two miles south, whence the primary wires transmitted the electric current to two transformers attached to a pole on the south side of Montgomery Street. Thence the electric current now stepped down to service voltage was carried by service wires to a pole on the north side of the street near the warehouse entrance, thence to a pole in the rear of the hotel in the alley. From this last pole leads or service drops were taken from the service wires to the west wall of the warehouse, a distance of 15 or 20 feet, where connection was made with plaintiff's wires leading into the warehouse. The service wires from which these leads were taken continued on by other poles through the alley between the Hotel and the theater building to Williams Street, which ran north and south, and from these poles wires went off to serve numerous other buildings, including the Vance

Hotel. On the 21st of February the weather was cold and sleet was on the ground, the trees, the wires. This condition continued into the night and early morning of the 22nd.

The plaintiffs' complaint contained the following allegations of negligence:

"12. That on February 22, 1947, about 4:00 o'clock A.M., electric current transmitted by defendant through its wires set fire to said High Price Tobacco Warehouse.

"13. That for some time immediately prior to the said fire defendant had notice of an unusual and dangerous condition in the electric current passing through its wires which extended from the transformer on the west side of South Montgomery Street to the High Price Tobacco Warehouse.

"14. That the transformer was so constructed that the flow of electricity through the wires to the High Price Tobacco Warehouse could be cut off at the said transformer.

"15. That the distance from said transformer to the pole on the property of Vance Hotel was about 290 feet and the distance from the transformer to the High Price Tobacco Warehouse was about 317 feet.

"16. That, at the time of said fire, the defendant's system in the City of Henderson was so constructed that the flow of current through the wires extending from the transformer to the High Price Tobacco Warehouse could be cut off at defendant's sub-station.

"17. That at the time of said fire there existed telephone connection in working order and capable of being used between Vance Hotel and defendant's sub-station.

"18. That plaintiff is informed, believes and alleges that defendant had other means, unknown to plaintiff, by which it could have stopped the flow of electricity through the wires from its transformer to the High Price Tobacco Warehouse.

"19. That the defendant negligently failed to stop the flow of electricity through its wires to the High Price Tobacco Warehouse, which it could have done in time to have avoided the fire which destroyed the said warehouse building and equipment therein owned by plaintiff.

"20. That defendant negligently permitted electric current in such volume as to set fire to plaintiff's warehouse to pass through its wires.

"21. That the negligence of the defendant was the proximate cause of the fire which destroyed plaintiff's property."

The plaintiffs' evidence tended to show that about 3:00 a.m. 22 February a humming noise was heard from the transformer on Montgomery Street and lights were arcing from the wires. Some wires were lying on the ground or dangling on the street near the warehouse, with light flashing from them. Fire was coming out of the transformer and fol-

lowing the wires. A heavy limb had fallen from a tree near the hotel and carried entangled wires to the ground where they gave off flashes of light. The wires from the transformer as they passed up the alley in the rear of the hotel and to the point of entrance to the warehouse were red-hot. The Fire Department was called and employees of the defendant Light Company were notified. The "trouble man" of the defendant was summoned, and he looked at the situation and did nothing. The District Manager of the defendant was in the hotel and saw the situation. He called the Line Foreman. The sub-station was called by the hotel clerk with request that current be cut off. The only response from the sub-station was a call to the trouble man. There was one sectionalized point at Gholson Street which could have been opened and the current supplying this area cut off. This was some three or four blocks away. There was heavy ice on the wires and the wind was blowing. These conditions continued until about 4:00 a.m. when the dull sound of an explosion in the warehouse was heard and shortly afterwards flames burst from the roof, and the building was consumed.

The plaintiffs contended that the dangerous conditions caused by the defendant's broken and tangled electric power wires, evidenced by the flashing and arcing within a few feet of the warehouse, and the red-hot appearance of the wires transmitting the electric current to the warehouse, were discovered and made known to defendant's agents and employees some time before the warehouse caught on fire, in ample time for the defendant to have cut off the current and removed the danger; and that the defendant's negligent failure so to do was the proximate cause of the loss of which plaintiffs complain.

The defendant's evidence tended to show that the fire could not have been set out in plaintiff's warehouse by means of defendant's electric wires, and that the fire was not caused by electricity; or, if so, the fire was caused by some defect or short circuit within the warehouse; that the conditions described by the witnesses were due to the sudden breaking of a large limb from a tree near the hotel, caused by heavy sleet, and that the heated wires resulted from a short circuit thereby caused; that the appearance of the transformers indicated fuses had blown and the current cut off in the transformers; that cutting off current at power sub-station would have been useless; that the sound of an explosion and the sudden envelopment of the warehouse in flames did not indicate combustion from a heated wire; that no other building served by the same wires was injured; only the lights went out in the hotel, due to a short circuit. Defendant offered as a witness an expert in electrical engineering who testified as to the probable action of electricity under the circumstances described and the causes and effects of the condition observed, and expressed the opinion that the heating of the service wires leading into the

warehouse was caused by a short circuit or ground inside the warehouse which would have had the effect of drawing enough current to heat the drop red.

Issues were submitted to the jury and answered as follows:

"1. Was the warehouse of C. J. Fleming destroyed by the negligence of the defendant, Carolina Power & Light Company, as alleged in the complaint?    Answer: No.

"2. If so, did C. J. Fleming, by his own negligence, contribute to the destruction of said warehouse, as alleged in the First Further Answer . and Defense contained in the Answer of the defendant, Carolina Power & Light Company?    Answer: ................

"3. What was the difference in the value of the real estate of C. J. Fleming described in the complaint, immediately before and immediately after the fire?    Answer: ................

"4. Was the fire which destroyed said warehouse caused by defective construction, wiring, or appliances on C. J. Fleming's side of the point of delivery of said electricity so supplied to said warehouse?    Answer: No."

From judgment on the verdict in favor of the defendant the plaintiffs appealed.

*Gholson & Gholson and Joyner & Howison for plaintiff, appellant, C. J. Fleming.*

*Murray Allen for plaintiffs, appellants, Insurance Companies.*

*A. A. Bunn, Kittrell & Kittrell, Perry & Kittrell, Eric Norfleet, Charles F. Rouse, and A. Y. Arledge for defendant Carolina Power & Light Company, appellee.*

DEVIN, J.    The verdict on the first issue in the trial below defeated the plaintiffs' action, and the finding on the fourth issue is presently immaterial.

The assignment of error chiefly relied on by the plaintiffs as ground for a new trial was the following instruction given by the court on the first issue: "In respect to that (first) issue the court instructs you that if the plaintiff has satisfied you by the greater weight of the evidence that the employees of the defendant Power Company, or any of them, whose duties required them to act in emergencies, had notice that the secondary wires leading from the transformers on Montgomery Street west, and serving the plaintiff's warehouse, were arcing and flashing light and giving other indications that they were over-charged with electricity, and has further satisfied you by the greater weight of the evidence that such condition was a dangerous one, and was such as to call for quick action on the part of said employees, or any of them, and was of such character

as to demand that the said employees, or any of them, in the exercise of the degree of care which the circumstances required should cut off, or caused to be cut off, the current flowing through said wires, and that said employees, or any of them, failed to cut off or caused to be cut off the said current, and that their failure so to do was the proximate cause of the fire that destroyed plaintiff's warehouse, it would be your duty to answer the first issue yes. If the plaintiff has failed to so satisfy you of those facts, by the greater weight of the evidence, then it would be your duty to answer that issue no."

Plaintiffs contend this instruction should be held for error for that it eliminated from the jury's consideration one of the grounds upon which they sought to recover, to wit, the negligence of the defendant in permitting electric current to pass through its service wires in such volume as to set fire to plaintiff Fleming's warehouse.

It is argued that when the evidence offered is considered in the light most favorable to the plaintiffs, it should be found sufficient to raise the reasonable inference that the warehouse was set on fire by the electric current furnished by the defendant, and that this dangerous element under the control of the defendant was negligently permitted to flow into the building in such volume as to cause the fire complained of. The plaintiffs present the view that the evidence here was such as to invoke the application of the doctrine of *res ipsa loquitur* (*Turner v. Power Co.*, 154 N.C. 131, 69 S.E. 767), and that this principle in connection with other facts in evidence, was sufficient to have required the submission of this phase of the case to the jury as another ground upon which the first issue might be answered in plaintiffs' favor; and that when the court in effect instructed the jury, if they failed to find the defendant was negligent in respect to cutting off the electric current, after notice of the dangerous conditions then existing, to answer the first issue no, plaintiffs were deprived of the benefit of a substantial ground for a finding by the jury of actionable negligence. Furthermore, it is contended that in paragraph 20 of the complaint negligence of the defendant in this respect had been alleged.

We cannot follow the plaintiffs on this argument. The complaint does not specifically or sufficiently set forth allegations of negligence in the respect now claimed. Paragraph 20 is in these words: "That the defendant negligently permitted electric current in such volume as to set fire to plaintiff's warehouse to pass through its wires." It does not specify wherein the negligence consisted. Necessarily the defendant Carolina Power & Light Company permits the flow of electric current through its wires in volume sufficient to cause fire under some conditions, and in the prosecution of the business for which it was created it may lawfully do so without incurring liability, unless it be in some respect negligent in so

doing, being under the duty of exercising the degree of care commensurate with the dangers involved. *Calhoun v. Light Co.,* 216 N.C. 256, 4 S.E. 2d 858. To characterize an act or course of conduct as negligent without more is insufficient. As stated in McIntosh on Prac. & Pro., sec. 388, "In negligence cases, a general allegation of negligence is insufficient and the facts constituting negligence must be given and that it was the cause of plaintiff's injury." *Conley v. R. R.,* 109 N.C. 692, 14 S.E. 303; *Gillis v. Transit Corp.,* 193 N.C. 346 (348), 137 S.E. 153; *Whitehead v. Tel. Co.,* 190 N.C. 197, 129 S.E. 602; McIntosh, sec. 359.

It is necessary "that the negligent acts or omissions be specifically stated in order that the court may see whether there has been a breach of duty." *Charlotte v. Cole,* 223 N.C. 106, 25 S.E. 2d 407; *Thomason v. R. R.,* 142 N.C. 318 (324), 55 S.E. 205.

An examination of the plaintiffs' complaint and the record of the testimony offered leads us to the conclusion that the gravamen of the allegations of negligence in the complaint and of the evidence offered was the defendant's failure, after notice of dangerous conditions then existing, to stop by means available the flow of electricity to plaintiff's warehouse. The case seems to have been fought out before the jury in the trial below on this ground, the plaintiffs contending the condition of sleet, broken and dangling wires, and the heated appearance of the wires leading into the warehouse imposed upon the defendant the duty, after notice, of cutting off the current, and that the defendant's failure so to do was the proximate cause of plaintiffs' loss. The defendant countered with evidence *contra,* contending the fire was not of electric origin, was not caused by defendant's negligence, but was caused by plaintiffs' fault, or by the unforeseen breaking of a limb from a tree.

This was the ground on which the battle was won and lost in the court below. The instruction given by the court on this issue, now assigned as error, presented the case concisely and correctly to the jury. The rule, as stated by *Chief Justice Stacy* in *Gorham v. Ins. Co.,* 214 N.C. 526, 200 S.E. 5, is that "An appeal *ex necessitate* follows the theory of the trial." Or, as expressed by *Justice Brogden* in *Potts v. Ins. Co.,* 206 N.C. 257, 174 S.E. 123, "The theory upon which a cause is tried must prevail in considering the appeal, and in interpreting a record and in determining the validity of exceptions." *Webb v. Rosemond,* 172 N.C. 848, 90 S.E. 306; *Walker v. Burt,* 182 N.C. 325, 109 S.E. 43; *Shipp v. Stage Lines,* 192 N.C. 475, 135 S.E. 339; *Holland v. Dulin,* 206 N.C. 211, 173 S.E. 310; *Weil v. Herring,* 207 N.C. 6 (10), 175 S.E. 836; *Keith v. Gregg,* 210 N.C. 802, 188 S.E. 849; *Jernigan v. Jernigan,* 226 N.C. 204, 37 S.E. 2d 493.

Plaintiffs in their assignments of error also brought forward certain exceptions noted to the ruling of the court in the admission or rejection

FLEMING *v.* LIGHT CO.

of testimony. They excepted to the striking out of the testimony of a witness that when defendant's employee Lewis arrived on the scene before the fire and observed the condition of the transformer he was heard to "grunt," but it does not appear what meaning or significance, if any, was to be attributed to this gutteral noise, or its materiality to the issue.

Plaintiffs excepted to the admission of testimony from a nonexpert witness, who was defendant's District Manager, to the effect that electricity does not flow where not wanted, and that there must be an appliance or short circuit to complete the path from transformer back to transformer before it would flow. However, this witness had already testified at length without objection as to the behavior of electric current through transformers, and there was other evidence to same effect from an expert witness. We do not perceive that plaintiffs' cause was hurt by the testimony to which this exception was noted.

Plaintiffs also noted numerous exceptions to the testimony of N. E. Cannady, who was admitted to be an expert in electrical engineering. But an examination of this testimony in the light of plaintiffs' objections leaves us with the impression that the examination of this witness and the opinion evidence elicited in response to hypothetical questions were well within the bounds of competent testimony from an expert witness under the circumstances of this case.

There was no error in admitting the insurance policies which had been issued by the plaintiff insurance companies on this warehouse. The plaintiff Fleming had testified without objection as to these policies and the amounts covered in each. It was on account of payment of these policies that these plaintiffs derived their interest and had been made parties to the action. *Fleming v. Light Co.,* 230 N.C. 65, 51 S.E. 2d 898. The exception to the exclusion of a question to the witness Wood does not seem to involve a matter of serious import.

We have examined plaintiffs' other exceptions to the charge but do not find prejudicial error therein. The trial judge's charge to the jury seems to have been full and fair and presented the determinative issues to the jury in substantial accord with the requirements of the statute, G.S. 1-180, and the decisions of this Court.

Unfortunately for the plaintiffs, the jury found the facts on the first issue against them, and we discover no sufficient ground in law upon which to disturb the result.

No error.