THERESA McDUFFIE KEITH v. UNITED CITIES GAS COMPANY, A CORPORATION, AND DUKE POWER COMPANY, A CORPORATION.

(Filed 14 January, 1966.)

**1. Gas § 1—**

　　Gas is an intrinsically dangerous substance and a supplier thereof is held to a high degree of care to prevent escape thereof into a building.

**2. Trial § 21—**

　　Upon motion to nonsuit, plaintiff's evidence must be considered in the light most favorable to her, giving her the benefit of all reasonable inferences with all conflicts resolved in her favor, and defendant's evidence in conflict must be disregarded.

**3. Appeal and Error § 51—**

In passing upon the correctness of judgment of nonsuit, the Supreme Court must consider all the evidence favorable to plaintiff, both properly and improperly admitted.

**4. Gas § 2—**

Proof of an explosion in a building serviced by natural gas does not establish that gas had leaked from the pipes or fixtures, the doctrine of *res ipsa loquitur* not being applicable.

**5. Same—**

If a customer detects the odor of gas in his building after a fire therein had been extinguished, and the customer makes no effort to inform the gas company, does not attempt to turn off the gas at the valves of the individual units of the equipment or examine the main cut-off valve, such customer is guilty of contributory negligence as a matter of law barring recovery for a subsequent fire and explosion.

**6. Same—**

Even though gas is an inherently dangerous commodity, the liability of the supplier for damages resulting from escaping gas must be based upon its negligence.

**7. Same—   Evidence held insufficient to show that fire was caused by negligence of gas company.**

The evidence favorable to plaintiff tended to show that, after a fire in her building causing minor damage, she detected the odor of gas in the building and advised the gas company of this fact. Plaintiff's evidence would support no inference except that the gas company thereupon shut off the supply of gas to the building, and at the time of a second fire and explosion gas was not in the building in any dangerous quantity. *Held:* The evidence is insufficient to be submitted to the jury on the issue of negligence of the gas company.

**8. Trial § 21—**

The rule that upon motion to nonsuit plaintiff's evidence must be taken as true does not extend to statements of witnesses which are contrary to established scientific truth of which the court may take judicial notice.

**9. Same;   Gas § 2—**

Where plaintiff's evidence shows without contradiction that the fire in suit had been burning in the interior of her one-room building for some ten minutes before an explosion therein occurred, testimony to the effect that the fire and explosion were caused by a spark getting into the natural gas will not be taken as true, since it is contrary to scientific fact that gas would remain in any quantity for a period of ten minutes in the presence of fire without exploding.

**10. Electricity § 4—**

Electricity is an inherently dangerous agency, and power companies are held to the utmost diligence consistent with the operation of their business to prevent injury therefrom.

KEITH *v.* GAS CO.

**11. Electricity § 7—**

A customer, in order to hold an electric company liable for a fire on his premises, must show that the fire was proximately caused by electricity supplied by the company and that the company in supplying the electricity was negligent.

**12. Same—**

Evidence that a power company employee at the request of a customer took out the meter at a building after a fire therein had burned off the insulation on wires in the building, and that the employee subsequently reinstalled the meter, the wires being still without insulation, *is held* sufficient to permit the inference that the reinstallation of the meter caused electricity to pass through the wiring inside the building, causing the subsequent fire, and is sufficient to be submitted to the jury on the issue of the power company's negligence.

**13. Evidence § 42—**

An expert may testify only to those conclusions which are based upon facts within his own knowledge or upon facts theretofore shown in evidence and narrated in a proper hypothetical question.

**14. Evidence § 51—**

A hypothetical question must include only facts which are already in evidence or those which a jury might logically infer therefrom.

**15. Same—**

An expert should testify as to whether upon a given state of facts a particular result might ensue and not that such result did in fact ensue.

**16. Same—**

Where plaintiff's evidence supports only the conclusion that the fire in suit had been in progress for a substantial period of time before there was an explosion in the building, a hypothetical question based upon the assumption that the explosion preceded the fire is improper.

APPEALS by defendants from *Clarkson, J.,* May-June 1965 Regular Session of HENDERSON.

This is a companion suit to the case of Zeb V. Swann and Wife against the same defendants, *post,* page 132. The cases were consolidated for trial and were argued together on appeal to this Court.

The plaintiff was the owner of a building just outside the city limits of Hendersonville. Mr. and Mrs. Swann were her tenants, operating in the building a laundromat for use by the public, and were the owners of various machines and other items of equipment located within the building. Duke Power Company supplied electric power to the tenants for use in the building for lights and other purposes. United Cities Gas Company supplied natural gas to the tenants for use in the building in the operation of furnaces, hot water heaters and laundromat equipment.

In the late afternoon of 8 May 1964, a fire (hereinafter called the first fire) occurred in the building, which did relatively minor

damage to it and to some of the equipment. Between 6 and 7 o'clock the next morning the building and equipment were completely destroyed by a fire (hereinafter called the second fire) and an explosion.

The plaintiff brought this action to recover for the damage to her building resulting from the second fire and explosion. The Swanns brought their action to recover for the damage to their equipment and loss of profits from the operation of the laundromat.

In each action it is contended by the plaintiff therein that the second fire and explosion resulted when an electric spark ignited gas which had escaped from the gas pipes into the building. In each action the complaint alleges that the Gas Company was negligent in failing to use reasonable care to shut off the flow of gas to the building when it knew, or should have known, that gas was escaping from the pipes or laundromat equipment therein. The Power Company is alleged to have been negligent in that, after first removing its electric meter, thus cutting off electricity from the building, following the outbreak of the first fire, it reinstalled the meter and so permitted electricity to enter the building without having made a proper inspection following the first fire, though it knew, or should have known, that natural gas was escaping into the building and that the first fire had burned insulation from the wires within the building. It is alleged that the negligence of each company was a proximate cause of the second fire, explosion and resulting damage and that the negligence of the two defendants concurred, making both liable for the loss sustained by the plaintiff.

In each case each defendant, in its answer, denies negligence by it and alleges contributory negligence by the plaintiffs.

In each case the jury found both defendants were negligent, the plaintiff was not contributorily negligent and the plaintiff sustained damage in an amount fixed by the verdict. From judgment in accordance with the verdict in each action both defendants appealed. The defendants make joint assignments of error, these being the same in each case. These are numerous and relate to the admission and exclusion of evidence, to the overruling of the motion of each defendant for judgment of nonsuit and to certain portions of the instructions to the jury. The cases were tried together and the evidence is the same in each except upon the question of damages, no question as to the amount of such damages being presented by the appeals.

The plaintiff's evidence tends to show:

The building was constructed of cement blocks, brick and glass. It consisted of one large room, in which the equipment was lo-

cated, and a rest room. Above the ceiling was an attic with lou-
vered openings in each of the gable ends for ventilation, which
louver slats in each gable were knocked out by water from the
fire hoses at the time of the first fire, thus providing unobstructed
cross ventilation through the attic. There was a wooden partition
separating the hot water heaters from the portion of the room open
to use by the customers but the hot water heaters were not in a
separate room, closed off from the rest of the building.

The gas meter was located outside the building. The regular gas
line ran through the meter. On each side of the meter was a cutoff
valve. A bypass line left the regular gas line before it reached the
first of these cutoff valves and rejoined it beyond the second one.
The bypass line had upon it a cutoff valve of its own. The purpose
of the bypass line was to make it possible, if need therefor arose,
to close the two cutoff valves in the regular line, open the valve in
the bypass line and thus permit the meter to be removed or ser-
viced without interrupting the flow of gas to the operations in the
building. The closing of either valve in the regular line would pre-
vent any gas going into the building through that line and the
closing of the valve in the bypass line would prevent any gas en-
tering the building through it. The various units of equipment had
their own individual cutoff valves.

The electric meter was plugged into a meter box on the outside
of the building. From the meter box wires ran through the wall to
a master switch box on the inside wall. From this switch box wires
ran to other switch boxes on the same wall and thence to gas appli-
ances and light fixtures.

The Gas Company installed the gas lines leading from the meter
to the various units of equipment in the building. Prior to the fires
the laundromat equipment was all in excellent condition. The tenant-
operator had its own service man employed to look after it and
make repairs as and when needed. If anything was observed re-
quiring the attention of the Gas Company it was called. There is no
indication of any such call to which it did not respond.

The first fire occurred between 4 and 5 o'clock in the afternoon.
The Valley Hill Fire Department, a volunteer organization, re-
sponded to the call and the fire was soon extinguished. Only rela-
tively minor damage to the building and to one of the gas heaters
resulted from this fire. It originated in or near a gas hot water
heater, spread up the woodwork on the wall, and burned insula-
tion off of some of the electric wires upon the wall.

The plaintiff, her husband, Mr. and Mrs. Swann, two employees
of the Gas Company, two employees of the Power Company and
Tom Lyda, an independent, licensed electrician, who originally

wired the building for the plaintiff, came to the premises while the first fire, or the subsequent clean-up, was in progress.

During the first fire, upon instructions from a fireman, one of the employees of the Power Company pulled the electric meter out of the meter box, thus cutting off all electricity from the building. The employees of the Gas Company came to the building during the first fire and went around to the back of it but did not enter the building. They stayed only a short time and reported to the plaintiff's husband that they had cut the gas off.

During or immediately following the first fire, the plaintiff's husband stated to one of the employees of the Power Company that evidently gas had been escaping at the heater where the fire started and he did not want any electricity or gas in the building until it was repaired and rewired.

In the course of the fighting of the first fire the firemen cut a hole in the ceiling of the building about three feet in diameter. This hole in the ceiling and the ventilators in the gable ends of the roof remained open. Natural gas, being lighter than air, rises when it escapes.

When Mrs. Swann arrived at the first fire one of the firemen told her that the gas and electricity had been cut off. The plaintiff and her husband testified that after the first fire was extinguished they smelled gas in the building. Mrs. Swann testified that after the first fire was extinguished she smelled in the building some odor which she could not identify. None of them called this to the attention of the Gas Company, whose employees did not go into the building and were not present when the odors were so noticed. There is no indication that they closed the cutoff valves on the individual units of equipment within the building, or examined the cutoff valves at the meter.

After the first fire the plaintiff, her husband, Mrs. Swann and Lyda remained on the premises discussing the necessary repairs and rewiring. It was agreed that Lyda would begin this work at 7:30 o'clock the next morning. The employee of the Power Company who had taken out the electric meter stopped back by the building while their discussion was in progress. Lyda requested him to reinstall the electric meter so that he could have light when required for his work. Mrs. Swann heard this request and did not object to it. Neither she, the plaintiff, nor the plaintiff's husband authorized Lyda to have the meter reinstalled. Pursuant to Lyda's request, the employee of the Power Company reinserted the meter in the meter box. The building was then locked, Mrs. Swann having the only keys, and they all left. All were satisfied that the first fire was then out and the plaintiff's husband testified, "When I

left the building after the first fire I was satisfied in my own mind that the gas and electricity were off." Mrs. Swann testified, "I was satisfied that the building was secure to the extent that I had been assured by everyone that everything was off and was safe—Mr. Lyda and the firemen told me that it was all off."

Shortly before 7 o'clock the next morning, smoke was again observed coming out of the building by the plaintiff's witness Marlier. At the same time he heard the truck of the Fire Department en route to the fire, some undisclosed person having already turned in the alarm. Thereafter, he heard an explosion in the building and flames shot upward to a considerable height. As a result of this fire and explosion the building and the laundry equipment were destroyed.

After the second fire had been extinguished, the metal electric switch boxes on the interior wall of the building were examined and found to be rusted and smoked on the outside and burned on the inside of the boxes. These boxes contained charred particles of insulation and the wires inside the boxes were without insulation upon them.

A witness for the plaintiff, found by the court to be an expert, testified, over objection, that in his opinion an electric "spark ignited gas in this building and this is what caused the fire." This was in response to a hypothetical question containing numerous hypotheses, including, "that on the morning of the 9th of May 1964, * * * an explosion occurred * * * that the building and its contents caught fire and the blaze rose some 25 feet high." The same witness also testified that if the jury should find from the evidence and by its greater weight that the fire had been in progress in the laundromat for some ten minutes and then a loud noise was heard coming from that direction, this would not change his opinion that there was an explosion caused by an electric spark "getting in the natural gas." In response to the same hypothetical question, another witness for the plaintiff, found by the court to be an expert in the field of electrical wiring, testified that in his opinion there was gas present and an electric spark ignited the gas. He further testified that in his opinion the cause of the charred condition on the interior of the switch boxes was electric current.

Evidence offered by the Gas Company tends to show:

Upon arrival at the premises at the time of the first fire the Chief of the Fire Department went to the gas meter and shut off the gas supply by turning, with a pipe wrench, the cutoff valves upon the line which passed through the meter, the valve on the bypass line being already in an off position. When he returned to the premises the next morning, in response to the second fire alarm, he

again checked the valves and they were all still in the off position. He did not smell any gas on the premises after the first fire.

Albert Stepp, an employee of the Gas Company, went to the first fire and went to the gas meter which he found was cut off. He went inside the building, after the first fire was extinguished, and did not smell gas. He also went to the second fire and, at that time, examined the valves and found them in an off position, as they had been following the first fire.

Following the second fire the service manager of the Gas Company went to the building, checked the valves on the meter assembly and found them in the off position. He tested the meter and found no gas seepage through it when the valves were in such position.

Evidence offered by the Power Company tends to show:

Its employee, Young, who is also a member of the Volunteer Fire Department and went to the two fires in that capacity, removed the electric meter from the meter box at the time of the first fire. After the second fire was under control, he went to the meter box and found the electric meter had been reinstalled. He then reentered the burning building and found the main switch at the switch box on the interior wall was pulled into an off position so that current could not pass beyond this switch box to the other switch boxes or to the various light fixtures and machinery. He did not smell any gas in the building.

After the first fire was extinguished, the assistant Chief of the Fire Department inspected the building and found that all electric switches were in the off position. He went to the second fire and, after it was under control, entered the building and found the switches still in the off position. Following the first fire he remained in and around the building for approximately an hour and a half and did not smell any odor of gas, nor did he smell such odor on the occasion of the second fire.

Lyda testified that he went to the building following the first fire, inspected it, found insulation on some of the wires had been burned away, and conferred with Mrs. Swann and the plaintiff's husband concerning the necessary rewiring. It was agreed that he would commence this work the following morning at 7:30 o'clock. In the presence of the plaintiff's husband and Mrs. Swann, Lyda talked with Charles Stepp, an employee of the Power Company, who had stopped by the building following the first fire, and told him that he needed the electricity on so as to have light for his contemplated work. He requested Stepp to reinstall the meter, to which Mrs. Swann and the plaintiff's husband agreed. Lyda thereupon turned all switches to the off position so there would be no current going in the wire circuits within the building. He returned

the next day following the second fire, went into the building and found all switches still in the off position. It was his opinion that with the switches in that position no electric current could pass any switch. Lyda did not smell any gas during the approximately 20 minutes that he was on the premises following the first fire.

Charles Stepp, the Power Company's employee who reinstalled the meter, observed it at that time and saw no indication of any revolution of its discs, from which he concluded that no current was then passing through the meter into the building.

*Prince, Jackson, Youngblood & Massagee for defendant appellant United Cities Gas Company.*

*William I. Ward, Jr., Whitmire & Whitmire, Carl Horn, Jr., and Harold D. Coley, Jr. for defendant appellant Duke Power Company.*

*Redden, Redden & Redden for plaintiff appellee.*

LAKE, J.

THE APPEAL OF THE GAS COMPANY

In *Graham v. Gas Company*, 231 N.C. 680, 684, 58, S.E. 2d 757, this Court, speaking through Ervin, J., said: "It is a scientific fact 'that gas ordinarily used for fuel is so inflammable that the moment a flame is applied it will immediately ignite with an instant explosion, if it is present in any considerable volume.' This being true, such gas is a dangerous substance when it is not under control." The original quotation is from *Holmberg v. Jacobs*, 77 Or. 246, 150 P. 284. It was again quoted with approval by this Court in *Ashley v. Jones*, 246 N.C. 442, 98 S.E. 2d 667.

The plaintiff's evidence shows that before the explosion occurred the second fire had been burning in this one room building long enough for someone to discover it and turn in the fire alarm and for the Fire Department's truck to be en route to the fire. The plaintiff's evidence thus refutes her contention that gas was present in the building in substantial quantity when this fire began and its ignition by an electric spark started the fire. The plaintiff's evidence shows, furthermore, that natural gas, being lighter than air, rises when released into a room. Her evidence also shows that from the time of the first fire to the time of the second there was in the ceiling of this room an opening, three feet in diameter, leading immediately into an attic, at each end of which there was an unobstructed opening substantial in size.

The plaintiff's evidence is that following the first fire employees of the Gas Company, then present at the building, reported to her

husband that they had cut the gas off, and a fireman stated to Mrs. Swann that this had been done. Her husband testified that when he left the building, after the inspection and conferences which followed the first fire, he was satisfied in his own mind that the gas was off. This was after the time when he and the plaintiff say they detected an odor of gas in the building.

Upon the defendants' motions for judgment of nonsuit, the plaintiff's evidence is to be interpreted in the light most favorable to her, all reasonable inferences favorable to her must be drawn therefrom, conflicts therein are to be resolved in her favor and evidence of the defendant establishing a different factual situation must be disregarded. *Moss v. Tate,* 264 N.C. 544, 142 S.E. 2d 161; *Sugg v. Baker,* 261 N.C. 579, 135 S.E. 2d 565; *Coleman v. Colonial Stores, Inc.,* 259 N.C. 241, 130 S.E. 2d 338; *Ammons v. Britt,* 259 N.C. 740, 131 S.E. 2d 349.

There is nothing in the evidence to indicate that the gas was not completely shut off from the building following the first fire unless it be found in these circumstances: (1) Before leaving the premises, after the first fire, the plaintiff and her husband smelled an odor of gas in the building; (2) the next morning an explosion occurred in the building while it was burning; (3) each of two witnesses, who were not present in the interval between the fires, testified that, in his opinion, a spark ignited gas in the building, this opinion resting upon the hypothesis that "an explosion occurred * * * that the building and its contents caught fire." We do not regard these circumstances as being inconsistent with the evidence offered by the plaintiff to the effect that the gas supply had been cut off.

The hypothesis upon which her expert witnesses based their opinion as to the presence of gas in the building, namely, that the explosion preceded the fire, is not supported by any evidence. It is contrary to the testimony of the only observer called as a witness for the plaintiff. Upon a motion for judgment of nonsuit all evidence favorable to the plaintiff, including evidence improperly admitted, must be considered. *Langley v. Insurance Co.,* 261 N.C. 459, 135 S.E. 2d 38. Therefore, the opinions of these expert witnesses are, for this purpose, treated by us as if competent. So treated, they are merely opinions that an explosion, followed by a fire, indicates the presence of gas in the building.

An explosion in a building to which gas pipes are connected is not, standing alone, evidence that gas escaped from such pipes into the building. There are many possible causes of an explosion in a building which has been burning for a substantial but undetermined interval of time. The doctrine of *res ipsa loquitur* does not apply

KEITH *v.* GAS CO.

so as to carry us, from proof of (1) natural gas service to a building plus (2) explosion, to the conclusion that gas had leaked from the pipes or fixtures. See Stansbury, North Carolina Evidence, § 227.

The testimony of the plaintiff and her husband that, following the first fire, they detected an odor of gas in the building is not inconsistent with her evidence showing that during the fire the supply of gas to the building was cut off. The odor may have continued for an interval after the closing of the valves prevented further escape of gas into the building. If, moreover, this could be regarded as evidence that gas was continuing to come into the building, it clearly establishes contributory negligence on the part of the plaintiff, for her evidence is that, knowing the representative of the Gas Company had left the premises, neither she nor her husband made any effort to inform the Gas Company of the continued presence of gas after its employee had supposedly shut off the supply, neither of them turned the cutoff valves on the individual units of equipment or examined the cutoff valves at the meter.

Although natural gas is so highly inflammable as to be an inherently dangerous commodity, so that the company supplying it must use a high degree of care to prevent its escape into a building, the company's liability for damage resulting from escaping gas is based upon its negligence. *Ashley v. Jones, supra; Graham v. Gas Co., supra.*

The plaintiff's evidence is that all of the gas burning equipment was in excellent condition before the first fire. It was maintained by her tenant's own service man. The Gas Company had no notice of any defect in any of the equipment prior to the first fire. When a gas company, engaged in supplying gas to a customer's building, becomes aware that gas is escaping from the fixtures into the building, it is the duty of the gas company to shut off the gas until further escape thereof can be prevented, even though the fixtures do not belong to the company and are not in its charge or custody. *Graham v. Gas Co., supra.* Interpreting the plaintiff's evidence in the light most favorable to her, it may be inferred that, at the time of the first fire, gas was escaping into the building from a water heater. Thus, the Gas Company, being advised of this fact, was under a duty to shut off the supply of gas to the building. However, the plaintiff's evidence is that it did so and it will support no other inference.

The rule that, in passing upon a motion for judgment of nonsuit, the plaintiff's evidence must be taken to be true does not extend to an opinion by a witness, not present at the event, to the effect that a condition existed which is contrary to scientific truth

so well established that the court will take judicial notice of it. As above noted, it is established scientific truth that natural gas present in quantity will explode immediately in the presence of fire. The statement by the plaintiff's expert witness, Cook, that notwithstanding a finding, supported by the greater weight of the evidence, that the second fire had been burning on the interior of the building for ten minutes before the explosion was heard, it would still be his opinion that the explosion was caused by an electric spark "getting in the natural gas" does not have to be taken, even upon motion for judgment of nonsuit, as establishing the fact that gas was in this building, in quantity, without exploding, in the presence of such fire. There is, furthermore, nothing in the record to show that the fire had not been burning more than ten minutes prior to the only explosion shown by the evidence.

There is, therefore, not sufficient evidence in the record to support a finding of negligence on the part of the Gas Company and its motion for judgment of nonsuit should have been granted.

### THE APPEAL OF THE POWER COMPANY.

Electricity is also inherently dangerous. Consequently, a company supplying it to a customer's building must use a high degree of foresight and must exercise the utmost diligence consistent with the practical operation of its business. *Kiser v. Power Co.*, 216 N.C. 698, 6 S.E. 2d 713. Such company is not, however, liable for damages resulting from a fire, unless it be shown that the fire was proximately caused by the electricity supplied by the company to the building and that, in so supplying the electricity, the company was negligent. *Fleming v. Light Co.*, 232 N.C. 457, 61 S.E. 2d 364.

Plaintiff's evidence, considered as it must be upon a motion for judgment of nonsuit, must be deemed to establish that the first fire burned insulation upon the wires carrying electric current through the building, so that the metal wires were thereafter exposed. In this situation, the meter was taken out, cutting off all current from the building. The plaintiff's husband, who was her spokesman at the fire, she being present, instructed the Power Company's employee, who took out the meter, not to replace it until the building was rewired. Nevertheless, the Power Company's service man subsequently reinstalled the meter. To turn electric current into the wiring system of a building, with notice that the wires therein are bare of insulation, is not consistent with that high degree of care which must be used by an electric power company in the handling of its product.

There is evidence in the record from which it might be found that, before this meter was reinstalled, all switches inside the build-

ing had been pulled to an off position so that no current could pass through the master switch, that the switches remained in this position until after the second fire and that the reinstallation of the meter was done at the request of an electrician employed by the plaintiff and was consented to by the plaintiff's husband and by Mrs. Swann. However, all of this evidence was introduced by the defendant Power Company and may not be considered in passing upon its motion for judgment of nonsuit. Considering the plaintiff's evidence alone and drawing from it all reasonable inferences favorable to her, the jury could infer that the reinstallation of the meter caused electricity to pass through the wiring system inside the building, parts of which were bare of insulation and that this caused the second fire. Consequently, the Power Company's motion for judgment of nonsuit was properly overruled.

There was error, however, in permitting, over the Power Company's objection, plaintiff's witnesses Cook and Colb to testify, respectively: "My opinion is that a spark ignited gas in this building and this is what caused the fire"; and "There was gas present and an electrical spark ignited the gas."

Neither of these witnesses was present at the time of either fire. Each so testified in response to a question, to which the Power Company duly objected, which question was hypothetical in form and included, among its hypotheses, that "on the morning of the 9th of May, 1964, between 6:30 and 7 o'clock an explosion occurred in the Keith Building; * * * that the building and its contents caught fire and the blaze rose some 25 feet high and the building and contents were substantially damaged by the fire; * * *." The question was: "Under these circumstances, have you an opinion satisfactory to yourself as to the cause of the second fire on the morning of the 9th of May, 1964?"

The question is based on an hypothesis not supported by any evidence, namely, that the explosion preceded the fire and the building "caught fire" as a result of the explosion. The plaintiff's evidence is that the fire had been in progress for a substantial period of time before the explosion occurred. "To be competent, a hypothetical question may include only facts which are already in evidence or those which a jury might logically infer therefrom." *Ingram v. Mc-Cuiston,* 261 N.C. 392, 400, 134 S.E. 2d 705; *Jackson v. Stancil,* 253 N.C. 291, 303, 116 S.E. 2d 817; *Dameron v. Lumber Co.,* 161 N.C. 495, 77 S.E. 694; *State v. Holly,* 155 N.C. 485, 71 S.E. 450; *Burnett v. R. R.,* 120 N.C. 517, 26 S.E. 819; Stansbury, North Carolina Evidence, § 137.

Furthermore, the question was improper in form in that it calls for an opinion as to what was the cause of the second fire, rather

than an opinion as to whether the situation, propounded as an hypothesis which might be found by the jury to be a fact, could have caused the fire. See *Service Co. v. Sales Co.,* 259 N.C. 400, 414, 131 S.E. 2d 9; Stansbury, North Carolina Evidence, § 137. The function of expert opinion is to assist the jury in evaluating and applying facts shown by other evidence. This question called for, and in answering it, each witness stated, as a fact, the existence of a condition which the witness, not having been present, could not know, but as to which he could only conjecture, namely, that there was gas in the building. As was said by Devin, J., later C.J., speaking for the Court, in *Patrick v. Treadwell,* 222 N.C. 1, 4, 21 S.E. 2d 818, the rule permitting an expert witness to express his opinion "should not be relaxed to the extent of opening the door to the statement of an evidential fact in issue beyond the knowledge of the witness under the guise of an expert opinion."

The admission of this testimony in response to this hypothetical question was prejudicial to the Power Company and requires a new trial as to it. Since there must, for this reason, be a new trial as to the Power Company, it is not necessary to consider its other assignments of error. They relate to matters which may not arise upon another trial.

Reversed as to United Cities Gas Company.

New trial as to Duke Power Company.