Edgar Eugene BLACK, Plaintiff,

v.

PANHANDLE AND SANTA FE RAILWAY COMPANY, a corporation, Defendant,

Texas Employers Insurance Association, a corporation, Intervenor.

No. 5062.

United States District Court
E. D. Oklahoma.

May 15, 1963.

Raymond Criswell, Wewoka, Okl., for plaintiff.

Rainey, Flynn & Welch, Oklahoma City, Okl., Bonds & Matthews, Muskogee, Okl., for defendant.

Foliart, Shepherd & McPherren, Oklahoma City, Okl., for intervenor.

DAUGHERTY, District Judge.

The present posture of this case is as follows: A judgment of $5000.00 based upon a jury verdict was entered in favor of the plaintiff and against the defendant on December 6, 1962. This amount was paid into the court registry by the defendant and the defendant herein discharged. The Texas Employers Insurance Association had been allowed to intervene in this case over plaintiff's objection. On January 17, 1963, after the above judgment was entered plaintiff moved for a summary judgment and upon no objection by the intervenor judgment was entered in favor of plaintiff in the amount of $1681.05 and the Clerk directed to pay such amount to plaintiff from the fund in the court registry. The rights of both plaintiff and intervenor to contest their priority as to the balance, namely, $3,318.95, was expressly reserved to them. It is this amount, $3,318.95,

of the total judgment which is now in controversy.

There is pending for disposition at this time the plaintiff's Motion for Second Summary Judgment, directed at the above mentioned balance held by the Court Clerk, and the Motion for Summary Judgment of the intervenor directed at the same monies.

It has been stipulated to by counsel for both parties involved herein in conference with the Court in chambers that there is involved herein no serious dispute as to a material question of fact and that these motions may be submitted upon the pleadings, briefs and the affidavits and exhibits attached thereto.

The facts giving rise to the present controversy between the plaintiff and the intervenor as to these funds, as admitted and stipulated to in the various pleadings, briefs, exhibits attached thereto and conference between the Court and counsel for both parties, are as follows: The plaintiff was injured while working in an employment and for an employer covered by and subject to the Texas Employers' Liability Act, art. 8306 et seq., Vernon's Ann.Civ.St., hereinafter referred to as the Act. The plaintiff as an employee came within the provisions of the Act. The intervenor issued a policy of workmen's compensation insurance applicable to the plaintiff. After suffering the injury upon which this suit was based, plaintiff filed a claim with the intervenor for workmen's compensation benefits pursuant to the Texas statutes relating to workmen's compensation insurance. The agreement entered into between the plaintiff and the intervenor on July 13, 1961, was a compromise agreement and was submitted to and subsequently approved by the Industrial Accident Board of Texas. Such compromise agreement and subsequent approval was done pursuant to Article 8307, Section 12, of the Act. The intervenor paid $1,028.05 in accrued medical expense of the plaintiff and $2290.00 directly to plaintiff, or paid out a total of $3,318.05.

The Court has considered all of the pleadings and briefs filed herein in support of and in opposition to both motions and each exhibit, affidavit and letter, and finds that the plaintiff's Motion for Second Summary Judgment should be denied and that the intervenor's Motion for Summary Judgment should be sustained.

Plaintiff in support of his position asserts that (a) this Court has no jurisdiction to litigate the controversy herein for the reason there is a lack of diversity between the intervenor and the defendant, both being Texas corporations; (b) the intervenor, a Texas corporation, has no legal capacity to present and pursue its present claim in the Courts in Oklahoma for the reason that it is doing business in the State of Oklahoma and has not complied with the pertinent provisions of the Oklahoma Corporation Code relative to domesticating or licensing of foreign corporations to do business in Oklahoma; (c) that intervenor may not pursue its claim herein for the reason that it is suing on an obligation which is a liquidated amount and upon which intervenor has not paid the appropriate intangible personal property tax as required by 68 O.S. § 1515; and finally, (d) that the intervenor has no statutory or equitable subrogation rights to the funds in question herein by virtue of the Texas Employers' Liability Act; for the reason that the agreement between the parties, under which plaintiff was paid $3,318.05 by intervenor, was a common law release and not a compromise settlement agreement made pursuant to the workmen's compensation statutes of Texas which would vest any right of subrogation in the intervenor in this case.

The Court notes that intervenor has stated in its pleadings and briefs that it waives any claim for an allowance of attorney fees which may be authorized under the Texas Workmen's compensation statutes. Further, intervenor admits that it has no equitable subrogation right and limits its assertion of subroga-

tion to that authorized by statutes under Article 8307, Section 6a of the Act.

■ Dealing first with the question of jurisdiction, the Court finds that it was not ousted of jurisdiction by reason of the intervention in this action by a Texas corporation. The requisite jurisdiction between the original parties was present at the time this suit was filed in that the jurisdictional amount was present and the jurisdictional diversity of citizenship existed between the plaintiff and defendant. The plaintiff herein is an Oklahoma citizen and the defendant is a citizen of Texas. The fact that the intervenor and the defendant are both Texas corporations will not destroy the federal jurisdiction once it had attached. The intervenor petitioned into this action after it was filed pursuant to Rule 24(a). The presence of the intervenor, whose petition was allowed by the Court, was not essential to a decision of the controversy between the original parties to the action. The jurisdiction of this Court is not ousted by permitting intervention by an insurance carrier who has paid benefits to the plaintiff to protect its rights in a suit for recovery of damages to plaintiff. Virginia Electric & Power Co. v. Carolina Peanut Co., 4 Cir., 186 F.2d 816, 32 A.L.R.2d 234; Wichita R. & Light Co. v. Public Utilities Comm., 260 U.S. 48, 43 S.Ct. 51, 67 L.Ed. 124; Stewart v. Dunham, 115 U.S. 61, 5 S.Ct. 1163, 29 L.Ed. 329; Union Trust Co. of Pittsburgh v. Jones, 4 Cir., 16 F.2d 236. Having initially acquired jurisdiction of this action when it was removed from State court and not being ousted of jurisdiction by the subsequent intervention of the intervenor herein, the Court may proceed to adjudicate the subrogation claim made against the plaintiff and directed at the proceeds recovered now from the defendant.

■ As to the second proposition, in which plaintiff attacks the legal capacity of the intervenor to litigate this subrogation claim, the intervenor as a foreign insurance corporation is not subject to the provisions of 18 O.S. § 1.201. The Corporation Code of Oklahoma excludes insurance corporations from the applicability of Title 18 of the Oklahoma statutes. See 18 O.S. § 1.3. The regulation, including licensing and penalties for unauthorized transaction of business in Oklahoma, of foreign insurance corporations is outlined in Title 36 of the Oklahoma statutes, the Insurance Code. Carlin v. Prudential Ins. Co. of America, 175 Okl. 398, 52 P.2d 721. Under 36 O.S. § 1101 the intervenor may not transact business within this State without being duly authorized under the Insurance Code. However, under the Oklahoma Insurance Code, settlement of a claim in this State arising out of an insurance contract issued by an unauthorized insurer, shall not be deemed to constitute the transaction of insurance business in this State. See 36 O.S. § 1101 (D). Considering all the affidavits filed in support of the various pleadings herein the intervenor cannot be said to be transacting business in this State by adjusting plaintiff's claim so as to preclude its maintenance of this subrogation claim. Bringing this intervention claim alone would not constitute transacting business within this State. 36 O.S. § 101 et seq.; compare J. P. Bledsoe & Son v. W. B. Young Supply Co., 44 Okl. 609, 145 P. 1125; Iola State Bank v. Kissee, Okl., 363 P.2d 368.

■■ As to the nonpayment of an intangible personal property tax, 68 O.S. § 1515 in effect prevents suits for the collection of any bond, note, account receivable or other intangible personal property, as defined in 68 O.S. § 1501, unless the plaintiff alleges and proves proper payment of the applicable intangible personal property tax. The present claim of the intervenor could only fall, if at all, within Section (g), "[f]inal judgments for the payment of money," of those categories, under 68 O.S. § 1501, defined as intangible personal property. The intervenor does not assert, however, against the plaintiff herein a claim upon a final judgment for the payment of money. By its petition the intervenor asserted the tort liability of the defendant and a con-

tingent subrogation claim against plaintiff. A judgment sought and predicated upon tort liability is not subject to 68 O.S. § 1515. Webb v. Aetna Casualty & Surety Co., 194 Okl. 30, 147 P.2d 169; Calhoun v. Hicks, 208 Okl. 154, 255 P.2d 279. The liability of the defendant has been established herein, however, the subrogation claim of the intervenor was not adjudicated by the jury's verdict against the defendant. The subrogation claim contested now is not a suit or claim upon final judgment for the payment of money as envisioned by 68 O.S. § 1501 et seq. The intervenor still seeks a judgment against the plaintiff on its subrogation claim. Therefore, plaintiff's objection based upon nonpayment of the intangible personal property tax is not well taken. Moreover, the taxable situs of intervenor's subrogation claim, if one exists, would be in the State of Texas and not in the State of Oklahoma, and therefore not subject to the Oklahoma intangible tax law. See 68 O.S.A. § 1504 and cases annotated thereunder.

■ Plaintiff's final proposition is fundamentally that the agreement entered into between the plaintiff and the intervenor was not a compromise settlement agreement for the payment of compensation within the Texas statutes relative to workmen's compensation, but instead was an agreement under which plaintiff gave a common law release for a stipulated sum payable from the intervenor.

A study of the applicable Texas statutes indicates that plaintiff's position is untenable. It is true that Article 8306, Section 14 of the Act states that no agreement by an employee to waive rights for compensation is valid. This has been construed to apply only to agreements made prior to an injury and is not applicable to affect the right to compromise or settle a present existing compensation claim. Jenkins v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 211 S.W. 349; compare Brigham Young University v. Industrial Commission, 74 Utah 349, 279 P. 889, 65 A.L.R. 152; see also annotation 65 A.L.R. 160. The language of Section 14 does not prohibit the compromise of a workmen's compensation claim. The exclusive remedy of an employee subject to the Act against an employer covered by the Act if injured while in the course of his employment is under the terms of the Act. An employee does not waive his rights to compensation under the Act by compromising a claim made pursuant to the terms of the Act. The right to compromise a difference of opinion on any given set of facts is a valuable right held and which may be exercised by all persons unless specifically circumscribed or restricted by statute. A specific provision is made for the compromise and settlement of a disputed workmen's compensation claim under Section 12 of the Act. Section 5 of the Act recognizes the right of the parties to make such an agreement as provided in Section 12. In Texas Employers' Ins. Ass'n v. Ezell, Tex. Com.App., 14 S.W.2d 1018, 1019, the Court stated quite broadly that there is nothing in the compensation statute to prevent the parties from making any compromise and settlement of a claim or suit they bring.

As stated above, no agreement whereby an employee waives his rights to compensation is valid. Neither is any compromise settlement of a workmen's compensation claim valid unless approved by the Industrial Accident Board of Texas or by a court of competent jurisdiction. Morton v. Federal Underwriters Exchange, Tex.Civ.App., 173 S.W.2d 515.

The provision wherein a compromise settlement of a claim made for compensation under the Act is specifically set out and authorized is Article 8307, Section 12, which states that "[w]here the liability of the association or the extent of the injury of the employé is uncertain, indefinite or incapable of being satisfactorily established, the board may approve any compromise, adjustment, settlement or commutation thereof made between the parties." This section of the Act presupposes an uncertainty either in the liability of the carrier or the extent or nature of the injury to the employee

making a claim. The issues as thus drawn on these two possible questions are not determined by the Board. The action of the Board in approving, or disapproving, a compromise settlement under Section 12 is predicated upon a disagreement on a point or points as to which no adjudication by the Board is sought. Lumbermen's Reciprocal Ass'n v. Day, Tex.Com.App., 17 S.W.2d 1043.

Section 12 further presupposes the existence of conditions under which the parties have agreed that they desire, in lieu of an award of the Board, a compromise settlement. Such compromise settlement under Section 12 contemplates a suspension of the Board's action in determining the issues of fact and in substitution for such action the Board's action on an agreed settlement. The action taken by the Board under Section 12 is independent of the statute whereby they fix the amount of compensation. Thus the approval by the Industrial Accident Board of a compromise settlement is not an award of compensation nor is it a denial of compensation. It is not an adjudication upon the merits of the claim. Lowry v. Anderson-Berney Bldg. Co., Tex.Com.App., 161 S.W.2d 459. The compromise settlement when approved by the Board is binding upon the parties to it until it is set aside. The payment to the employee pursuant to a compromise settlement, duly approved by the Board, constitutes a bar to any further claim by the employee for compensation benefits in the absence of a showing of fraud, accident or mistake. Lumbermen's Reciprocal Ass'n v. Day, supra. In this regard it has the ramifications of a complete and final common law release. It is, nevertheless, a payment of compensation benefits under the Act even though such payment is effectuated in the form of an approved compromise settlement.

In this case a claim was made for compensation benefits. Certain benefits were in fact paid and then the claim compromised and settled pursuant to the terms of Section 12 of the Act. The approval of the Industrial Accident Board was secured and a final payment made to the plaintiff per the terms of the settlement agreement. The benefits received by plaintiff under the terms of the settlement with intervenor being compensation benefits under the Texas statutes vest in the intervenor the subrogation right authorized in Section 6a. Younger Bros., Inc. v. Moore, Tex.Civ. App., 135 S.W.2d 780; Traders & General Ins. Co. v. West Texas Utilities Co., 140 Tex. 57, 165 S.W.2d 713; Snodgrass v. American Surety Co., Tex.Civ.App., 156 S.W.2d 1004; Ft. Worth Lloyds v. Haygood, 151 Tex. 149, 246 S.W.2d 865; Pan American Ins. Co. v. Hi-Plains Haulers, Inc., Tex., 350 S.W.2d 644.

Plaintiff concedes that if the settlement agreement under scrutiny here is within the workmen's compensation statutes of Texas the intervenor has a statutory subrogation right by virtue of Article 8307, Section 6a. The right of subrogation of the intervenor has its existence only in the terms of the statute. It can be enforced only as therein permitted. Said Section 6a grants subrogation rights to the intervenor when compensation is claimed under the law and benefits are paid or assumed by the carrier. There is no limitation set out in Section 6a circumscribing such subrogation rights to awards of the Board as distinguished from payments made or assumed by way of compromise settlement between the parties approved by the Board. The amount recovered as to a third party tort feasor is to be apportioned between the parties as directed by the statute, and under the statute the intervenor herein first recoups itself for any compensation paid pursuant to the Act out of the amount so recovered and the excess only is paid to the injured employee. Fidelity Union Casualty Co. v. Texas Power & Light Co., Tex.Civ. App., 35 S.W.2d 782. Under Section 6a in a suit against a third party tort feasor the real beneficiary is the injured employee. In equity the real beneficiary may always be permitted to sue for the protection and enforcement of his right when the party having the mere legal right to sue fails or refuses to do so.

**314**

Section 6a gives the legal right to the insurance carrier to sue a third party tort feasor causing injury to a covered employee where it has paid claimed compensation. This statute does not destroy the employee's cause of action and when the indemnifying association fails to sue, the injured employee may do so, even though some compensation may have been claimed and received. Schnick v. Morris, Tex.Civ.App., 24 S.W.2d 491. The right to institute a suit against a third party is a right given to the indemnifying association. But it is not an absolute right. It is not an exclusive right. The injured employee has a cause of action burdened by the employer's insurance carrier to recoup itself out of any proceeds from the suit instituted by the employee. Traders & General Ins. Co. v. West Texas Utilities Co. et al., 140 Tex. 57, 165 S.W.2d 713.

In a case where the injured employee institutes the action, the insuror may nevertheless intervene and merely claim its right of subrogation. Schnick v. Morris, supra. In so doing, it may not assert any right to control the litigation. The right to recoup itself under Section 6a of the Act does not have an attendant duty to participate in the expense of the litigation. The insuror may sue the third party tort feasor as is its right under the Act where it has paid claimed compensation and recover out of any judgment obtained the reasonable expenses incurred in bringing the suit. Where the insuror declines to sue the injured employee may sue but there is no provision in the Act which would require the insuror to participate in the expenses of the litigation brought by the employee.

It is, therefore, ordered, adjudged and decreed that the plaintiff's Motion for Second Summary Judgment be denied, and further that the intervenor's Motion for Summary Judgment as to the proceeds now held by the Court Clerk in the amount of $3,318.95, be sustained. The Clerk is ordered to pay said sum in the court registry to the intervenor, The Texas Employers Insurance Association, Inc.