**VIRGINIA ELECTRIC & POWER CO. v. CAROLINA PEANUT CO. et al.**

**VIRGINIA FIRE & MARINE INS. CO. v. CAROLINA PEANUT CO. et al.**

Nos. 6182, 6183.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 5, 1951.

Decided Feb. 3, 1951.

W. B. Rodman, Jr., Washington, N. C., and Archibald G. Robertson, Richmond, Va., (T. Justin Moore and T. Justin Moore, Jr., Richmond, Va., on brief), for appellant, Virginia Electric & Power Co.

W. T. Joyner, Raleigh, N. C., and Beverly S. Royster, Oxford, N. C., (Frank W. Hancock, Oxford, N. C., Murray Allen and H. E. Powers, Raleigh, N. C., on brief), for appellees Carolina Peanut Co. and others.

Murray Allen, Raleigh, N. C., for appellant Virginia Fire & Marine Ins. Co.

W. B. Rodman, Jr., Washington, N. C., (T. Justin Moore, Archibald G. Robertson and T. Justin Moore, Jr., all of Richmond, Va., on brief), for appellee Virginia Electric and Power Co.

Before PARKER, Chief Judge, and SOPER, Circuit Judge, and WARLICK, District Judge.

PARKER, Chief Judge.

These are appeals from the judgment in a case brought against the Virginia Electric Power Co. to recover damages for negligently causing the destruction by fire of the plant of the Carolina Peanut Company at Powellsville, North Carolina. The case was tried before a jury which found the defendant guilty of negligence in failing, after notice, to shut off the flow of electric current to the Peanut Company's building, thereby causing the building and its contents to be destroyed by fire, and fixed the value of the property so destroyed at $145,000 for the building, $30,000 for the machinery and equipment and $65,000 for other property. Whether there was sufficient evidence to take the case to the jury in support of this finding or whether verdict should have been directed for the defendant is the question presented by the appeal in No. 6182.

The action to recover damages for the destruction of the property was instituted by the Peanut Company in a North Carolina state court and was removed into the court below by the defendant. After the removal was accomplished, defendant moved that the insurance companies which had paid insurance on the property, other than the Virginia Fire and Marine Insurance Company, be brought into the case as parties plaintiff, as they were the real parties in interest in the suit. The Virginia company, which had issued a policy covering machinery and equipment was not brought in, evidently because it was feared that impleading it might defeat the court's jurisdiction. The motion was allowed; and the judgment eventually entered in the case was in favor of the Peanut Company and the insurance companies so impleaded. The total of the judgments rendered in favor of the companies which had insured the machinery and equipment was for the amount of the verdict less the proportionate share therein of the Virginia company, which had not been allowed to intervene. Prior to the trial of the cause, the Virginia company moved to be allowed to intervene but its motion was denied. After the verdict of the jury fixing the value of the property destroyed by fire, it again moved that it be allowed to intervene and that judgment be entered in its behalf for its proportionate part of the liability for the destruction of the machinery and equipment as fixed by the jury's verdict; but this motion was also denied. The appeal in No. 6183 presents the question as to whether the Virginia company should have been allowed to intervene and have judgment on the verdict.

When the evidence is considered in the light most favorable to plaintiffs, it is clearly sufficient to sustain the action of the trial judge in submitting the case to the jury on the question as to the destruction of the property by fire as the result of defendant's negligence. There was evidence that electric current was supplied to the Peanut Company by the defendant; that, on the night of the fire, electricity was observed arcing on the wires in a dangerous manner causing flashes of fire in close proximity to the building; that these flashes of fire were observed by persons in the neighborhood, who were alarmed thereby and telephoned to defendant's manager at Ahoskie informing him of the dangerous situation that existed and asking that the electric current be cut off at once; that, instead of acting promptly to cut off the current upon receipt of this information, the manager telephoned to an assistant to investigate the situation; and that in the meantime the building caught on fire from the arcing electric current and was destroyed. There is evidence that the notice given the manager as to the existing danger was most urgent, that he was warned that if he waited to send to investigate it would be too late for effective action and that, if he had acted promptly and had had the

current cut off at once upon receiving this information, the burning of the building would have been avoided. While there was evidence in the case from which contrary conclusions could be drawn, we cannot consider it; for it is elementary that, in passing on the motion for directed verdict we must consider the evidence in the light most favorable to the party against whom the direction is asked and must draw from the evidence every inference in his favor that can reasonably be drawn. When this rule is applied, there can be no question as to the sufficiency of the evidence to support the verdict. The principles of law governing the case were well stated in the instruction which was given in Fleming v. Carolina Power & Light Co., 232 N.C. 457, 61 S.E.2d 364, 367, as follows: "In respect to that issue the court instructs you that if the plaintiff has satisfied you by the greater weight of the evidence that the employees of the defendant Power Company, or any of them, whose duties required them to act in emergencies, had notice that the secondary wires leading from the transformers on Montgomery Street west, and serving the plaintiff's warehouse, were arcing and flashing light and giving other indications that they were overcharged with electricity, and has further satisfied you by the greater weight of the evidence that such condition was a dangerous one, and was such as to call for quick action on the part of said employees, or any of them, and was of such character as to demand that the said employees, or any of them, in the exercise of the degree of care which the circumstances required should cut off, or cause to be cut off, the current flowing through said wires, and that said employees, or any of them, failed to cut off or cause to be cut off the said current, and that their failure so to do was the proximate cause of the fire that destroyed plaintiff's warehouse, it would be your duty to answer the first issue yes. If the plaintiff has failed to so satisfy you of those facts, by the greater weight of the evidence, then it would be your duty to answer that issue no."

See also Graham v. North Carolina Butane Gas Co., 231 N.C. 680, 58 S.E.2d 757; Kiser v. Carolina Power & Light Co., 216 N.C. 698, 6 S.E.2d 713; Clare v. Bond County Gas Co., 356 Ill. 241, 190 N.E. 278; Bristol Gas & Electric Co. v. Deckard, 6 Cir., 10 F.2d 66, 67; Oesterreich v. Claas, 237 Wis. 343, 295 N.W. 766, 134 A.L.R. 499, 502 and note at 526 et seq.; Osborne v. Tennessee Electric Power Co., 158 Tenn. 278, 12 S.W.2d 947, 949. What was said by the Court of Appeals in the case last cited, which involved the failure to shut off electric current when informed of a dangerous situation, is pertinent here, viz.: "Defendant in error insisted, and its proof tended to show, that it did all that it reasonably could after notice of the fire to relieve the situation of the menace of its wires, but whether after such notice as was indicated was received, it could, and should, by telephone orders have shut off the current, or have adopted the mode it did to further inform itself and act, and whether such investigations as it did make were with reasonable dispatch and efficiency under the circumstances, or whether the actions it did take were such that an ordinarily prudent man would have adopted under the circumstances, were questions for the jury and not for the court."

Defendant contends that it was entitled to a directed verdict because of evidence which it introduced that it was customary practice with electric companies to send an employee to investigate before cutting off current, when trouble on the lines was reported; but it was for the jury to say whether it was negligent to follow such custom where there was evidence that a dangerous condition calling for immediate action had been called to the attention of its manager. The jury might well have thought that in the exercise of ordinary care such custom should not have been followed in such a serious and compelling situation. While evidence of custom is pertinent on the question of negligence as tending to establish whether due care has been used under the circumstances of the case, it is not conclusive of the question, which is one for the

determination of the jury where there is other evidence from which the jury could properly conclude that ordinary care was not used. Custom cannot excuse the failure to use ordinary care. Grant v. Graham Chero-Cola Bottling Co., 176 N.C. 256, 97 S.E. 27, 4 A.L.R. 1090; Stone & Co. v. Clyde Steamship Co., 139 N.C. 193, 51 S.E. 894; Morehead v. Brown, 51 N.C. 367; American Coal Co. v. DeWese, 4 Cir., 30 F.2d 349, 351.

■ We are not impressed by the argument that because defendant supplied current under a tariff approved by the public service commission of the state, it could not cut off the current from its lines to avoid a dangerous situation which threatened great loss to one of its customers. No authority is cited in support of the proposition, and we know of none. The evidence shows that defendant's employees did not hesitate to shut off the current from its lines to save a transformer of insignificant value as compared with the Peanut Company's plant; and the idea that defendant may be excused of negligence in failing to shut off the current which was threatening the destruction of the plant merely because other customers might be deprived of current for the few minutes that would elapse before the wires leading to the plant could be severed, is one which finds no support either in law or in common sense. The requirement that the defendant furnish uniform service to its customers does not, of course, mean that it may not cut off its current in an emergency to prevent impending calamity.

■ We think that the Virginia company should have been allowed to intervene in the case and should have been given judgment for its proportionate part of the damage resulting from the destruction of the insured property as found by the jury. The suit had been instituted by the Peanut Company to recover the damage which it had sustained as the result of the destruction of its property by fire; and it is elementary that in such a case an insurance company which has paid a part of the loss is entitled to a pro rata portion of any amount that may be re-

covered, and is entitled to join in the suit for the recovery of damages. United States v. South Carolina State Highway Department, 4 Cir., 171 F.2d 893; Dobson v. Southern Ry. Co., 129 N.C. 289, 40 S.E. 42; Powell & Powell v. Wake Water Co., 171 N.C. 290, 88 S.E. 426; Lumbermen's Mutual Ins. Co. v. Southern Ry. Co., 179 N.C. 255, 102 S.E. 417; Service Fire Ins. Co. v. Horton Motor Lines, Inc., 225 N.C. 588, 35 S.E.2d 879, 880. As said by the Supreme Court of North Carolina in the case last cited: "When property upon which there is insurance is damaged or destroyed by the negligent action of another, the right of action accruing to the injured party is for an indivisible wrong—and a single wrong gives rise to a single indivisible cause of action. Powell & Powell v. Wake Water Co., 171 N.C. 290, 88 S.E. 426, Ann.Cas.1917A, 1302; 1 Am.Jur. 493. The whole claim must be adjudicated in one action. 1 Am.Jur. 481. See note 19 for numerous citations. The cause of action abides in the insured through whom the insurer, upon payment of the insurance, must work out his rights."

■ As pointed out elsewhere in the case last cited, the insurer may sue in his own name without joining the insured where the insured has no claim in excess of the insurance and the claim of the insurer represents the entire unsettled claim; but there is nothing in this which would preclude the right of an insurer to intervene in a case like this, instituted by the insured whose loss resulting from the fire had not been fully covered by insurance even though the loss on the machinery and equipment had been covered. Intervention by the insurer in such case for the purpose of protecting his rights is clearly authorized by Fed.Rules Civ.Proc. rule 24(a), 28 U.S.C.A. which provides: "(a) *Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: * * * or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; * * *."

Permitting intervention after federal jurisdiction has attached by an insurer which is a resident of the same state as defendant will not defeat the jurisdiction. The rule applicable was thus stated by Chief Justice Taft in Wichita R. & Light Co. v. Public Utilities Comm., 260 U.S. 48, 54, 43 S.Ct. 51, 53, 67 L.Ed. 124: "Jurisdiction once acquired on that ground is not divested by a subsequent change in the citizenship of the parties. Mullen v. Torrance, 9 Wheat. 537, 539, 6 L.Ed. 154; Clarke v. Mathewson, 12 Pet. 164, 171, 9 L.Ed. 1041; Koenigsberger v. Richmond Mining Co., 158 U.S. 41, 49, 15 S.Ct. 751, 39 L.Ed. 889; Louisville, New Albany & Chicago Ry. Co. v. Louisville Trust Co., 174 U.S. 552, 566, 19 S.Ct. 817, 43 L.Ed. 1081. Much less is such jurisdiction defeated by the intervention, by leave of the court, of a party whose presence is not essential to a decision of the controversy between the original parties."

Recovery of damages in a case of this sort is like the setting aside of a fraudulent conveyance by a creditor's bill. No one would contend in such case that permitting intervention by a creditor of the same state as defendant to protect his rights would oust the court of jurisdiction previously acquired, see Stewart v. Dunham, 115 U.S. 61, 5 S.Ct. 1163, 29 L.Ed. 329, and Union Trust Co. of Pittsburgh v. Jones, 4 Cir., 16 F.2d 236; and there is as little reason for holding that the jurisdiction of the court is ousted by permitting intervention by an insurance company to protect its rights in a recovery of damages. It would result in unnecessary hardship and confusion to hold that such a company, entitled to partial subrogation, may not intervene for the protection of its interests in a suit properly pending in the federal courts, but must go into a state court and try over again issues that have been already settled in the federal court. There is nothing in modern practice which sanctions any such absurdity.

The action of the court in refusing to permit the intervention of the Virginia Fire & Marine Insurance Co. will be reversed and the judgment appealed from will be modified to permit the intervention of that company and to give judgment in its behalf for its pro rata portion of the damages due to the destruction of the property insured as found by the jury; and as so modified the judgment appealed from will be affirmed.

No. 6182: Modified and Affirmed.

No. 6183: Reversed.