Gerald FILKINS, Plaintiff,

v.

McALLISTER BROTHERS,
INC., Defendant.

Civ. A. No. 87–135–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 22, 1988.

Moody, Strople and Lawrence, Portsmouth, Va., Jeffrey Breit, Norfolk, Va., for plaintiff.

John R. Crumpler, Jr., Kaufman & Canoles, Norfolk, Va., for defendant.

## OPINION AND ORDER

KELLAM, District Judge.

Plaintiff instituted this action on March 3, 1987, pursuant to 46 U.S.C.App. § 688 *et seq.* known as the Jones Act, General Maritime Law, and for maintenance and cure. He alleges that while serving as a seaman aboard the Tug BARBARA McALLISTER, he was injured as a result of the negligence of defendant, the unseaworthiness of its tug, and is entitled to maintenance and cure. In addition, plaintiff sought to recoup for wages as provided for in a contract between the Seafarers International Union, plus attorneys fees and costs. Tried to the jury, it returned a verdict for plaintiff for $180,000.00. Defendant has moved to set aside the verdict as excessive, for error of the court in failing to submit to the jury the issue of contributory negligence, and for error in directing a verdict in favor of the plaintiff on the issues of seaworthiness of the tug and negligence of the defendant, as well as taking from the jury the issue of maintenance and cure. Defendant further asserts that the verdict is against the clear weight of the evidence.

### I.

Plaintiff was a cook aboard the Tug BARBARA McALLISTER. On the occasion in question, the tug was towing a barge from Norfolk to Charleston. The winch on the tug, to which the tow line was attached, and brake shoe allegedly "gave way" or failed and the barge broke loose from the tug. The seas were described as not out of the ordinary, but were some two, three to four feet. When the barge broke loose, the captain called all personnel to the wheel house and advised them of his plan to recapture the barge. He placed them on emergency alert. The barge had an emergency hawser aboard. The captain decided to put one or two men from the tug aboard the barge and have them do the necessary duties to get the hawser aboard the tug and make the connection. He outlined his plan to all personnel. Two men were sent to the bow of the tug. The tug would approach the barge and when in contact with it, the men would jump or climb aboard the barge. Because of the sea action, it was necessary for the captain to await a time when a lull in the wave action occurred. That is, a time when the barge would not be rising and falling with the waves. The tug was very close by and when the captain determined the time was ripe, he would go in. He called to the men that the time was ripe, moved close and the two men got aboard the barge. There was a jar or shaking between the tug and the barge.

Plaintiff said that after the captain had advised of his plan to recapture the barge, and while waiting for the lull, he went back to the galley and because he did not know exactly the minute the captain would move in to the barge, and the captain did not notify him he was "going in", the contact between the tug and barge caused him to be slammed up against the back of a chair in the galley. He said that at that time, he had a six gallon jug in his hands with about a half gallon of water in it. He did not drop the jug. He said he immediately had pains in his back which radiated down his leg. Plaintiff said he went up to the wheel

house and asked the captain if he was trying to break his back; that the captain "never had too much of a response" (Tr. of Ev. p. 49) and that he had no other conversation with the captain about the incident. The captain testified plaintiff never told him he hurt himself on the tug, and he never recorded it in the log. The plaintiff could not remember whether he thereafter assisted in securing the emergency hawser. Thereafter, the flotilla returned to Norfolk to have some repairs to the winch. Plaintiff made no further report or statement about any injury. While the flotilla was in for the repairs, plaintiff assisted with the work to earn overtime pay, performing duties on the winch and with the lines, and duties normally not those of the cook. He was described as climbing and "jumping around" in the performance of these extra duties, taking in the hawser, hawser cable, pulling on the wire rope, and working on the winch. He made no complaint of injury or pain until the flotilla was again under way, and after it passed the Chesapeake Bay Bridge Tunnel, he then informed the captain he would like to get off and go ashore. The Coast Guard was called and he was removed sometime later. The reason for his removal is the subject of much dispute. Plaintiff testified he told the captain he needed to get off because the pain was getting worse. The captain testified that when plaintiff advised him he would like to get off the tug, he said his back was bothering him, and that "it was an old injury; and that it wasn't bothering him that bad right then, but he knew from past experience that within 24 hours it was going to be hurting him excruciatingly" (Tr. of Ev. p. 151). When the captain filled out the report of the incident, he wrote in the report that the plaintiff said it was an old injury acting up. In a subsequent conversation with the plaintiff, after the trip was over, the captain said plaintiff told him he didn't injure himself on the tug; it was just an old injury and he wanted to get home. Before the plaintiff left the tug, he called his wife on the ship to shore telephone. The captain verified "he heard plaintiff telling his wife that his old back injury was acting up again and he needed to get off

because he knew that the pain was going to be really bad within the next 24 hours." (Tr. of Ev. p. 153). This is exactly what the plaintiff had earlier told the captain when he first stated he wanted to get off the tug. The captain was corroborated by G. White, one of the seamen aboard the tug, who was called as a witness by plaintiff. He testified he never heard plaintiff complain of being hurt, and he heard plaintiff talking with his wife about having an old problem with his back. When plaintiff was asked whether he told his wife over the telephone that he was getting off the tug because his old back injury was acting up again, he said "I might have said that," (Tr. of Ev. p. 69), and that if he said that, he was telling the truth. Again, he said that when he was talking to his wife telling her he was getting off the tug, he was thinking he had the old problem with his back.

After returning to his home, plaintiff waited a week before seeing a physician. The physician saw him on January 27, February 6, March 25, April 28 and May 29th. On the 29th, he was made fit for duty. He accepted a position as cook aboard a tug and worked almost a month until the regular cook aboard that tug returned, and he was relieved of his position. Plaintiff said the reason he did not continue to work was because there was no work available. He then went back to see his physician on July 14, 1987.

There is much dispute as to the real condition and injury of the plaintiff. His attending physician said he has lumbar nerve irritation and this is probably based on some scarring that's present in the nerve that we are not seeing, and at this time he cannot see a surgically correctable lesion. He was of the opinion that plaintiff would probably have pain if he went back on board a tug, but he was not saying he could not be employed in another position; that when he is doing heavy lifting, bending, stooping, pushing and pulling, he has the back irritation which will persist. CAT scan and a myllogram performed were normal and showed no cause for pain. X-rays were normal and he had good strength in his muscle group. When plaintiff was ex-

amined on September 1st and again on October 8th by Dr. Ira Cantin, there was no deformity, no swelling and a normal range of back motion. Plaintiff complained of pain in the area of the 12th rib, high on the left side of his back, but made no complaint in the lumbosacral area. There was no pain on straight-leg raising, no evidence of nerve root irritation, and no atrophy. Plaintiff had complained of some transient numbness in his toes, but had none at the time of Dr. Cantin's examination. Dr. Cantin found he could return to work. Dr. Morales' determination of nerve root irritation is based upon use of an EMG and thermogram, the value of which Dr. Morales says is controversial.

There was no evidence concerning medical expenses, or plaintiff's hourly or monthly earnings or what wages were lost, nor any evidence of the amount, extent or reach of the lessening of earnings in the future, or earning capacity.

■ Plaintiff contended that when a tug is towing a barge, it is negligence on the part of the barge owner and tug not to have an emergency hawser on board the barge with a tag line affixed to the hawser. This tag line would trail behind the barge so that it could be fished out of the water by the tug without the necessity of the tug coming into contact with the barge and the tug could then pull the emergency hawser affixed to the barge aboard the tug and make a proper connection. Secondly, plaintiff says it was negligence for the captain to make contact between the tug and barge without first notifying all persons on the tug of the exact moment when the contact would be made.

First, the plaintiff presented the testimony of Tug Captain Thompson, who was asked if there was a normal practice when the tug was coming along side a loose barge to recapture the barge, to notify the crew before actual contact is made. Captain Thompson said it was normal procedure with him, and that he normally sent someone to notify others.

Captain Hudgins said that when it was necessary for a tug to go along side of a barge to recover it, he generally notified all on board of the action, or told them he would hit the emergency bell to let them know something was going wrong.

Secondly, Captain Thompson said when you have an emergency hawser on the barge, you usually throw a tag line overboard which can be picked up out of the water without the necessity of putting a man on board the barge, and this was the normal procedure used by McAllister.

Captain Hudgins said the normal procedure for barges in this area was to have a tag or tail line on them.

■ The problem with the testimony of Captain Thompson and Captain Hudgins is the lack of evidence of what is standard in the trade. Each of them said you have to take everything into consideration, look the situation over, and decide what is best to be done; that the action to be taken depends upon the weather and wind. Captain Thompson, in answering whether the procedure was to have a tag or trail line, answered it should be, and as far as he knew, it was the way when he was brought up. What one does, or how one usually operates, nor what is normal operation for him, does not establish that as the proper way, nor does a failure to do what is normally done establish negligence. One's normal action may well constitute negligence. The question is what does a reasonably prudent person acting prudently do or fail to do, and what is the accepted standard of the industry.[1]

1. While the general usage, custom or standard is not conclusive of a standard of due care or reasonable prudence, what is ordinarily done by persons generally, engaged in a similar activity, may be evidence of what an ordinarily prudent person would do under the same circumstances. When a person acts in accordance with a uniform custom of persons engaged in like business in the absence of evidence showing that such custom is negligence, should be sufficient to show that such a person acted without negligence. See *Virginia Electric & Power Co. v. Carolina Peanut Co.,* 186 F.2d 816, 32 A.L.R.2d 234 (4th Cir.1951); *Dunagan v. Appaliachian Power Co.,* 33 F.2d 876 (4th Cir.1929), 57 Am. Jur.2d, sub. Negligence §§ 77–78–79. While evidence of custom is pertinent on the question of negligence as tending to establish whether due

■ Here, the tug captain called all personnel to the wheel house and discussed the plan to recapture the barge. Plaintiff was present and knew of the plan. Two men were sent to the bow of the tug to get aboard the barge. The captain was to wait for a lull in the action of the sea and then go in. The distance between the tug and the barge was only a few feet. Only seconds would be required. So far as the record shows, all personnel, except plaintiff, were on deck. The captain said that when the lull came and he decided to go in, there was no time to notify anyone. They had already been placed on emergency alert. There was no one to send below to notify plaintiff; nor was there time to send anyone below. The plaintiff had already been told what was to be done.

There was evidence from Captain Douglas that the use of the tag or trail line was not the standard in the industry; that about half of the tows used it and about half did not; that the only requirement for a tag or trail line was when a barge was going through the Chesapeake Bay Bridge Tunnel, it must have a tag or trail line, or the assistance of a tug, and that the flotilla had the assistance of a tug in passing through the bridge tunnel. As to notifying everybody of the fact the tug was going along side the barge, they were already on emergency alert, awaiting the right moment, and as witness White, called by plaintiff, said, all were waiting for the lull, and when it was decided it was time to move in there was no time to send word to anyone. White further said the captain could not have handled the boat better. With evidence that all of the crew was experienced, it was a question of fact for the jury as to whether plaintiff was contributorily negligent or whether defendant was negligent.

## II.

The cause of action here asserted arose under maritime law and issues of negli-

gence, unseaworthiness and damages are to be decided under federal law. "With admiralty jurisdiction comes the application of substantive admiralty law." *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 106 S.Ct. 2295, 2299, 90 L.Ed.2d 865 (1986). Along with the applicable statute, 46 U.S.C.App. § 688 (Jones Act) "the general maritime law, as developed by the judiciary, applies" Id. See also *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970); *Kossick v. United Fruit Co.*, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961); *Whorton v. T.A. Loving & Co.*, 344 F.2d 739 (4th Cir.1965); *Miller v. Semet-Solvay Division, Allied Chemical Corp.*, 406 F.2d 1037 (4th Cir.1969), *cert. denied*, 395 U.S. 921, 89 S.Ct. 1776, 23 L.Ed.2d 239 (1969). Not only is this court governed in this case by federal law, but the proper role of the court, generally, "in the federal system in reviewing the size of jury verdicts is ... a matter of federal law." *Donovan v. Penn Shipping Co.*, 429 U.S. 648, 649, 97 S.Ct. 835, 837, 51 L.Ed.2d 112 (1977). See also *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Johnson v. Parrish*, 827 F.2d 988, 991 (4th Cir.1987). It was an accepted part of the common law that the court should correct what appeared to be an excessive verdict. *Gazette, Inc. v. Harris*, 229 Va. 1, 325 S.E.2d 713 (1985). See also *Hogan v. Carter*, 226 Va. 361, 310 S.E.2d 666 (1983).

## III.

Turning first to the alleged error in directing a verdict on the issue of negligence and contributory negligence, such direction is only proper where the evidence is such that fair minded men may draw only one inference therefrom. Trial by jury is the normal and preferred way to dispose of issues of fact in civil cases. Negligence, contributory negligence and proximate

care has been used under the circumstances of the case, it is not conclusive of the question, which is one for the determination of the fact finder where there is other evidence from which the fact finder could determine whether proper care was or was not used. *Virginia Electric & Power Co.*, supra, 186 F.2d at 819–820. The

mere fact that there may have been a safer method than the one employed, or that danger might have been avoided if a different manner had been utilized, does not in and of itself constitute actionable negligence. The question of negligence was for the trier of the facts.

cause are generally questions for the jury. *McClure v. Price*, 300 F.2d 538 (4th Cir. 1962); *Vandergrift v. United States*, 500 F.Supp. 229 (E.D.Va.1978), and whether contributory negligence is an element of the case is a question typically for the jury. *Cicinato v. McPheeters*, 542 F.2d 634 (4th Cir.1976). Only where there is an absence of probative facts supporting the position of the non-moving party should the court decide a verdict. *Theriot v. J. Ray McDermott & Co.*, 742 F.2d 877 (5th Cir.1984).

The question of whether defendant was negligent in not having a tag or trail line, or in not sending someone down to the galley to notify plaintiff that the tug was going along side the barge was one of fact for the jury. He had already been properly warned. Likewise, the question of contributory negligence was for the jury.

## IV.

 There is no simple or easy rule for use in determining whether a verdict is adequate or excessive. Each case must be judged by its own facts. *Winbourne v. Eastern Airlines, Inc.*, 758 F.2d 1016 (5th Cir.1984), *cert. denied*, 474 U.S. 1036, 88 L.Ed.2d 582 (1985) *Hollins v. Powell*, 773 F.2d 191 (8th Cir.1985) *cert. denied*, 475 U.S. 1119, 106 S.Ct. 1635, 90 L.Ed.2d 181 (1986). Prior awards are an aid and may be reviewed to determine whether an award is excessive or inadequate or within the range of usual verdicts in similar cases, or out of line compared to other awards in similar cases. *Haley v. Pan American World Airways, Inc.*, 746 F.2d 311 (5th Cir.1984); *Levka v. City of Chicago*, 748 F.2d 421 (7th Cir.1984). When a damage award is not rationally proportionate to awards assessed in similar cases for similar injuries, the award is excessive. *Joan W. v. City of Chicago*, 771 F.2d 1020 (7th Cir.1985).[2] That is, the court should consider other awards in other cases, as well as the nature and extent of the injuries,

**2.** Courts have approved verdicts as proper in similar cases, such as award of $17,500.00 to plaintiff who was partially disabled for months following accident, with out-of-pocket expenses approximately $2,649.00 not excessive. *Cohen v. Boxberger*, 544 F.2d 701 (4th Cir.1976).

Award of $31,500.00 for aggravation of a preexisting degenerative arthritic condition, requiring further surgery for repair of lumbar disc, approved. *Smith v. Custom Transport, Inc.*, 451 F.2d 1313 (4th Cir.1971).

Award of $4,000.00 to longshoreman who suffered fracture of 2nd, 3rd and 4th lumbar transverse processes on left side and bruised left kidney, who spent 21 days in hospital, with medical, loss wages and other expenses of some $4,300.00 approved. *Old Dominion Stevedoring Corp. v. Polski Linie Oceaniczne*, 386 F.2d 193 (4th Cir.1967).

Award of $2,000.00 with special damages of $420.00 for injuries to both arms, legs and back adequate. *Currie v. United States*, 201 F.Supp. 414 (D.C.Md.1962), Affd. 312 F.2d 1 (4th Cir. 1962).

Award of $3,500.00 to longshoreman for back sprain caused by unseaworthiness approved. *Wyborski v. Bristol City Line of Steamships, Ltd.*, 191 F.Supp. 884 (D.C.Md.1961).

Award of $60,000.00 for permanent injury, pain, skull fracture and permanent disability, requirement of surgery on two occasions, resulting in severe throbbing head pain for several days and thereafter intermittently for 2 to 3 weeks, and use of acrylic plastic to close 2 inch hole in skull. *Hurd v. American Hoist and Derrick Co.*, 734 F.2d 495 (10th Cir.1984).

Award of $45,000.00 for past and future pain and suffering due to back injury suffered in fall. *Hyde v. Chevron U.S.A., Inc.*, 697 F.2d 614 (5th Cir.1983).

Award of $20,000.00 to seaman for pain and suffering for back injury which existed for over 10 months not excessive. *Curry v. Fluor Drilling Services, Inc.*, 715 F.2d 893 (5th Cir.1983).

Award of $55,000.00 for plaintiff who suffered facial lacerations, loss of one eye and dental injuries not inadequate. *Black v. Hieb's Enterprises, Inc.*, 805 F.2d 360 (10th Cir.1986).

Award of $95,000.00 to 65 year old woman who suffered fracture of leg and elbow, the elbow resulting in physical impairment and continual pain. Not excessive. *Zeno v. Great Atlantic and Pacific Tea Co.*, 803 F.2d 178 (5th Cir.1986).

Award of $23,000.00 to injured deckhand with toe injury who underwent 2 operations and had slight limp, and complained of continued pain not inadequate. *Brooks v. Great Lakes Dredge–Dock Co.*, 754 F.2d 539 (5th Cir.1985).

Award of $35,000.00 for foot injury and for fright when accident became imminent under FELA excessive. *Bullard v. Central Vermont Ry.*, 565 F.2d 193 (1st Cir.1977).

Award of $25,000.00 made to seaman for pain and suffering and permanent physical impairment growing out of unseaworthiness incident. *Toddy v. Arkansas Valley Dredging Co.*, 470 F.Supp. 692 (E.D.Ark.1979).

Award of $2,000.00 to plaintiff who continued to complain of dizziness and headaches, and back pain appropriate where only tangible permanent effects were scars on head covered by hair, and deformity in fifth finger of left hand

suffering, expenses, diminution of earning capacity, age, expectation of life, permanency, and so on. *Thompson v. National R.R. Passenger Corp.*, 621 F.2d 814 (6th Cir.1980), *cert. denied,* 449 U.S. 1035, 101 S.Ct. 611, 66 L.Ed.2d 497 (1980). *Morrow v. Greyhound Lines, Inc.,* 541 F.2d 713 (8th Cir.1976). There must be some relationship between the claim made and the compensation in the award of damages. *Betancourt v. J.C. Penney Co.,* 554 F.2d 1206 (1st Cir.1977). If the amount of the verdict is entirely out of proportion to verdicts in similar cases for similar injuries and damages, or is so unreasonably high as to result in a miscarriage of justice, the court should set it aside. The question of excessiveness of the verdict is one left largely to the discretion of the trial court. *Dempsy v. Auto Owners Ins. Co.,* 717 F.2d 556 (11th Cir.1983), *Grunenthal v. Long Island R.R.,* 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968); *Great Coastal Express, Inc. v. International Bhd. of Teamsters,* 511 F.2d 839 (4th Cir.1975); *Johnson v. Parrish,* 827 F.2d 988, 991 (4th Cir.1987); *Swentex v. USAIR, Inc.,* 830 F.2d 552, 560 (4th Cir.1987); *Gill v. Rollins Protective Services,* 836 F.2d 194 (4th Cir.1987); *Edynak v. Atlantic Shipping, Inc., etc.,* 562 F.2d 215 (3rd Cir.1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978); *Afro–American Publishing Co. v. Jaffe,* 366 F.2d 649 (D.C.Cir.1966); *Williams v. Ryder Truck Lines, Inc.,* 489 F.Supp. 430 (E.D.Tenn.1979).

Hence, it requires the trial court to exercise a high degree of discretion and to proceed cautiously. But, it does not mean the court can escape its duty to act in a proper case.

One test often used is where the verdict is so unreasonably high as to result in a miscarriage of justice; or, so inordinately large as to exceed the maximum limits of a reasonable range within which a jury may properly operate. *Williams v. Steuart Motor Co.,* 494 F.2d 1074 (D.C.Cir.1974).

which prevented him from participating in sports and hobbies he formerly engaged. *Bush v. Ware,* 589 F.Supp. 1454 (E.D.Wis.1984).

Many times there is no identifiable aspect of the trial which can be pointed to as the basis for an excessive or inadequate verdict. But, when any excessive or inadequate verdict occurs, the cause "may be inferred simply from the unreasonable size of the figure the jury has returned." *Palmer v. Haluplzok,* 294 F.Supp. 489, 492 (D.C.Minn.1969). The verdict may be such that the court will "find the conclusion inevitable that the award ... bears no reasonable relation to the damages sustained ... and therefore is not supported by, and is contrary to the evidence." *Lynchburg Coca–Cola Bottling Co. v. Reynolds,* 215 Va. 1, 205 S.E.2d 396, 398 (1974). And this is so even though "the record contains no evidence that the jury was actuated by passion ... or prejudice, the verdict is so excessive as to shock the conscience of the court," that "it creates the impression that the jury misconceived or misunderstood the facts or the law, and is not the product of a fair and impartial decision." *Id.,* 205 S.E. 2d 398. *See also National Cab Co. v. Thompson,* 208 Va. 731, 739, 160 S.E.2d 769, 774 (1968).

### A

■ The trial judge plays an important role in the trial of a civil action. The finding of the amount that may be awarded in an action for damages as fair and just is, as a general rule, a duty imposed upon the jury, subject to the suprvision of the trial judge. In fixing the amount of damages, "no one would suppose that it is left wholly and solely to the jury," for "as with every other issue traditionally for jury resolution, the trial court must still determine whether, as a matter of law, the verdict comports with the law." *Curtis Publishing Co. v. Butts,* 351 F.2d 702, 718 (5th Cir.1965), aff'd, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967).

■ While great power is vested in a jury, the right of the jury to fix the amount of damages is not arbitrary or unlimited. Even though there is no specific rule by

Verdicts for larger sums have been approved, but in most incidents the injuries were substantially more severe and disabling.

which damages in cases like this are to be found, they may not be determined by speculation, passion or prejudice. "Damages must be reasonable," *Boston and Marine R.R. v. Talbert,* 360 F.2d 286, 291 (1st Cir.1966), *Compania Transatlantica Esponola S.A. v. Nelen Torres,* 358 F.2d 209, 214 (1st Cir.1966) and "no verdict can be permitted to stand which is found to be in any degree the result of appeals to passion and prejudice." *Minneapolis, St. P. & S. Ste. M. Ry. v. Moquin,* 283 U.S. 520, 521, 51 S.Ct. 501, 502, 75 L.Ed. 1243 (1931). "The law recognizes that an award of any type of damages—compensatory or punitive—made by a jury free of bias, may be too small or too large. When that occurs—when the judge concludes that the law regards the verdict as too small or too large—then appropriate action must be taken by the court." *Butts,* 351 F.2d at 718.

No one questions the right of the court, and its duty, to reduce the damages awarded by the jury, by remittitur or new trial, when it deems the amount excessive and the result of bias or prejudice, or a jury's misunderstanding of its duties, or where not supported by the evidence, as without evidence to support it, it will result in a miscarriage of justice. *Butts,* 351 F.2d at 718; *Johnson v. Parrish,* 827 F.2d at 991; *Dempsey v. Auto Owners Ins. Co.,* 717 F.2d 556 (11th Cir.1983); *Fenner v. Dependable Trucking Co.,* 716 F.2d 598 (9th Cir.1983).

## B

The duty of the trial judge in dealing with a motion to set aside a verdict as excessive, insofar as this Circuit is concerned, was made plain in *Johnson v. Parrish,* 827 F.2d at 991, stating:

In federal practice, it is the duty of the district judge to set aside an excessive verdict even when such a verdict is supported by substantial evidence "if he is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice." *Aetna Casualty & Surety Co. v. Yeatts,* 122 F.2d 350 (4th Cir.1941). Moreover,

the clearly discretionary act embodied in granting a new trial is reviewable only in the "most exceptional circumstances." *Id.* at 354. We can see no "exceptional circumstances" in this case.

This duty was further set forth in *Swentek v. USAIR, Inc.,* 830 F.2d, 552, 559 (4th Cir.1987), where it said:

In this case, the trial court set the verdict aside based in part on his own credibility determinations. This was proper, in assessing the need for a new trial, the trial judge "may weigh the evidence and consider the credibility of the witnesses" to assess whether the verdict will result in a miscarriage of justice. *Wyatt v. Interstate & Ocean Transport Co.,* 623 F.2d 888, 891 (4th Cir.1980). This is not a discretionary task, but a duty, as our cases have repeatedly emphasized. *Gill v. Rollins Protective Services Co.,* 773 F.2d 592, 595 (4th Cir. 1985); *Wyatt,* supra, at 891–2.

In *Wyatt v. Interstate Ocean Transport Co.,* 623 F.2d 888, 891–892 (4th Cir.1980), the court made it clear that "a trial judge has a duty to set aside a verdict and grant a new trial even though it is supported by substantial evidence 'if he is of the opinion that the verdict is against the clear weight of the evidence, or ... will result in a miscarriage of justice.'" (citations omitted). See also *Gill v. Rollins Protective Services Co.,* 773 F.2d 592, 595 (4th Cir. 1985).

In *Ford Motor Co. v. Mahone,* 205 F.2d 267 (4th Cir.1953), the court at page 272, said:

Verdicts of juries must be kept above suspicion and a judge should not hesitate to set a verdict aside where it is so grossly excessive as to be explained only on the basis of sympathy or prejudice ...; and the fact that the jury rendered a verdict for damages which the court found unreasonable and grossly excessive was a matter impeaching the fairness of the verdict....

In its supervision over the verdicts of the jury, if the court finds that the amount awarded is so great as to shock the conscience of the court and to create the impression that the jury has been motivated

by passion or prejudice, or has misconceived or misconstrued the facts or the law, or if the award is so out of proportion to the injuries suffered as to suggest that it is not the product of a fair and impartial decision, the court should step in and correct it. *Edmiston v. Kupsenel,* 205 Va. 198, 135 S.E.2d 777, 780 (1964). In *National Cab Co. v. Thompson,* 208 Va. 731, 160 S.E.2d 769 (1968), the court set aside as excessive a jury verdict of $10,000.00 awarded a plaintiff for a mashed thumb. The court quoted with approval from the earlier case of *Smithey v. Sinclair Refining Co.,* 203 Va. 142, 122 S.E.2d 872 (1961), and pointed out that in personal injury cases the amount of the award was left largely to the discretion of the jury,

> "But this is not to say that the verdict of a jury is not subject to the control of the courts. A healthy administration of justice requires that, in a proper case, the courts must take action to correct what plainly appears to be an unfair verdict. This authority is an ancient and accepted part of the common law." *National Cab* at 773.

### C

Too, in considering the amount of an award, it must be remembered that the verdict is not subject to federal or state income taxes. Particularly in attempting to calculate a sum for lost wages, it must be remembered that "the injured worker's lost wages would have been diminished by state and federal income taxes," ... "[s]ince the damages award is tax free." *Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 534, 103 S.Ct. 2541, 2549, 76 L.Ed.2d 768 (1983). See also *Mosley v. United States,* 538 F.2d 555 (4th Cir.1976). "Moreover, workers often incur unreimbursed costs, such as transportation to work and uniforms, that the injured worker will not incur." *Id.* Hence, the first stage in calculating an appropriate award for lost earnings is a determinator of what the earnings would have been. *Pfeifer,* 103 S.Ct. at 2550. Too, "when future payments or other pecuniary benefits are to be anticipated, the verdict should be made up on the basis of their present value only." *St. Lou-*

*is S.W. Ry. v. Dickerson,* 470 U.S. 409, 412, 105 S.Ct. 1347, 1348–49, 84 L.Ed.2d 303 (1985). It is "self-evident that a given sum of money in hand is worth more than the sum of money payable in the future." *Id.* 105 S.Ct. at 1349. The "failure to instruct the jury that present value is the proper measure of a damage award is error." *Id.*

### D

It has been the practice, supported by considerable decisions, that the amount to be awarded to an injured person is vested in the fact finder, usually the jury. But, "neither the antiquity of a practice nor the fact of steadfast legislative and judicial adherence to it through the centuries insulates it from ... attack [and] [t]he need to be open to reassessment of ancient practices other than those explicitly mandated ..." *Williams v. Illinois,* 399 U.S. 235, 239–40, 90 S.Ct. 2018, 2021, 26 L.Ed.2d 586 (1970). Nor does it relieve or justify this court from the performance of its duty to exercise proper control over verdicts as "new cases expose old infirmities which apathy or absence of challenge have permitted to stand." *Williams,* 399 U.S. at 245, 90 S.Ct. at 2024.

■ Even where a verdict is not considered to be "monstrous", it may well be shocking to the conscience of the court, and not based on substantial evidence. "Where findings are not supported by substantial evidence they are taken to be clearly erroneous." *Freeport Sulphur Co. v. S/S Hermosa,* 526 F.2d 300, 307 (5th Cir.1976). The facts of this case solicit the court to perform its duty and to exercise its judgment and set the verdict aside as excessive under the evidence, and as based upon an improper finding. It falls within the reasoning of Chief Judge Hutcheson, concurring in *Whiteman v. Pitrie,* 220 F.2d 914 (5th Cir.1955);

> at page 920:
> It seems clear to us that the verdict was excessive as matter of law and that, in not setting it aside, the district judge

abused, indeed transcended, his discretion and committed an error of law.

at page 921:

While we recognize that a judgment refusing a new trial may not be reversed in this court merely because the verdict is excessive in fact, and have many times held that way, we think it clear that it is the inescapable duty of this court, when, as here, the evidence furnishes no sound basis for the verdict, to reverse a judgment for error of law where the trial court has refused to set the verdict aside. Under that rule, upon these facts and under the circumstances shown here, we think it clear that there was error of law and that it can be corrected only by reversing the cause for excessiveness in law of the verdict and remanding the cause for retrial on the issue of damages.

See also *Complete Auto Transit, Inc. v. Floyd*, 249 F.2d 396 (5th Cir.1957), *cert. denied*, 356 U.S. 949, 78 S.Ct. 913, 2 L.Ed. 2d 843 (1958).

Where the verdict is clearly in excess of the amount which the evidence shows plaintiff is justly entitled to recover, it should be set aside by the trial court; or where the award is so great as to shock the conscience of the court and to create the impression that the jury has been motivated by passion, corruption or prejudice or has misconceived or misconstrued the facts or the law, or if the award is so out of proportion to the injuries suffered as to suggest that it is not the product of a fair and impartial decision, the court is empowered and in fact obligated, and it is the plain duty of the judge, acting within his legal authority, to step in and correct the injustice. *Rutherford v. Zearfoss*, 221 Va. 685, 272 S.E.2d 225 (1980); *Hardy v. Greene*, 207 Va. 81, 147 S.E.2d 719 (1966).

While the law recognizes the earning power of money in allowing interest on an award of money judgment, the law does not recognize the impact on judgments of inflation which occurred prior to judgment. *H.K. Porter Co. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115 (6th Cir.1976).

## E

Damages in tort cases are designed to provide reparation for the injury caused as the "cardinal principle of damages in Anglo–American law is that of *compensation* for the injury caused to plaintiff by defendant's breach of duty." *Carey v. Piphus*, 435 U.S. 247, 254–55, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978). See also *Memphis Community School District v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537, 2543, 91 L.Ed. 2d 249 (1986). Where a legal injury is of an economic character, just compensation should be awarded.

"[t]he general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." *Wicker v. Hoppock*, 6 Wall. 94, 99, 18 L.Ed. 752 (1867).

Quoted with approval in *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418–19, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975).

## F

But damages are not presumed, nor may they be based on speculation, but they must be proven, and the plaintiff bears the burden of proof to show the amount, as well as the fact of damages. *Pizaniv v. M/V Cotton Blossom*, 669 F.2d 1084, 1088 (5th Cir.1982). "Mere speculation cannot be allowed to do duty for probative facts," *Tennant v. Peoria & Pac. Union Ry.*, 321 U.S. 29, 32, 64 S.Ct. 409, 411, 88 L.Ed. 520 (1943), and the question as to evidence is "whether there is any upon which a jury can properly proceed to find a verdict...." *Gunning v. Cooley*, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720 (1929). That is, the plaintiff has the burden of proving every element of his case, including damages that flow from the alleged injury. *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 891, 894 (3rd Cir.1975). "A plaintiff is not permitted to throw himself on the generosity of the jury", for if "he wants damages

he must prove them." *Taliferro v. Augle,* 757 F.2d 157, 162 (7th Cir.1985).

In the "general run of tort cases, if only the facts and not the extent of injury is proven, only nominal damages may be awarded." *Ustrak v. Fairman,* 781 F.2d 573, 578 (7th Cir.1986). Damages, "like every other contested element of plaintiff's case, must be proven in order to be recovered." *Id.* at 579. "Although damages need not be proven with exactitude, they must be supported by evidence." *U.S. Industries, Inc. v. Blake Constr. Co.,* 671 F.2d 539, 550 (D.C.Cir.1982), [quoted with approval in *Certainteed Corp. v. Paul's Pipeline, Inc.,* 833 F.2d 1004 (4th Cir. 1987).] The Court must determine whether there is substantial evidence to support the jury's findings as to liability and damages. *Evington v. Forbes,* 742 F.2d 834, 835 (4th Cir.1984). "A mere scintilla of evidence is insufficient to sustain the verdict, and the inferences a jury draws to establish compensation must be reasonably probable." *Lust v. Clark Equipment Co.,* 792 F.2d 436, 437 (4th Cir.1986).

In reviewing a jury's finding of damages, due deference must be given the jury's determination, yet "a judgment cannot be upheld where the damages awarded are so excessive 'as to shock the judicial conscience.' *United States ex rel. Larkins v. Oswald,* 510 F.2d 583, 589 (2d Cir.1975); see *Dagnello v. Long Island R.R.,* 289 F.2d [797] at 806 [2nd Cir.1961]." *Martell v. Boardwalk Enterprises, Inc.,* 748 F.2d 740, 750 (2nd Cir.1984). "Surely there must be an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable men may differ, but a question of law." *Id.*

G

Plaintiff's physician made it clear he was not testifying plaintiff could not be employed, but he said that more likely than not he would have problems working on a tug from pain in his back and radiating down his leg.

The facts here are similar to those in *Johnson v. Parrish,* supra. The court there said at page 991:

Johnson has unquestionably suffered some degree of permanent impairment. Furthermore, he was entitled under West Virginia law to recover for pain and suffering as well as the mental anguish attendant to an apprehension of death. Nevertheless, the district court clearly had a substantial justification for finding the award of $150,000 to be a product of passion and prejudice. Johnson's actual medical expenses have been relatively minimal and his injuries comparatively slight. There was no loss of income shown at the first trial and no competent evidence presented with regard to a diminution of future earning capacity. Although we might disagree with the district court's conclusion, we cannot conclude that it was an abuse of discretion to grant a new trial on the issue of damages.

Here, plaintiff did not establish any sum due for medical expenses, lost wages, or loss of future employment. The record is void of evidence as to plaintiff's hourly or monthly earnings, and of his lessening of earning capacity, if any. The fact is that there was little or no evidence concerning damages. Hence, like in *Swentek,* the defendant denied, and in many instances, rebutted nearly all of plaintiff's (Swentek's) claims. 830 F.2d at 555.

During deliberation, the jury sent in a question to inquire whether it could render a structured verdict. It was advised it could not. With such desire and thinking, "[o]bviously such means may be quite as effective to beget a wholly wrong verdict as to produce an excessive one. A litigant gaining a verdict thereby will not be permitted the benefit of calculation, which can be little better than speculation as to the extent of the wrong inflicted ..." *Minneapolis St. P. & S. Ste. M. Ry.,* 283 U.S. 520, 521–522, 51 S.Ct. 501, 502, 75 L.Ed. 1243 (1931).

V.

For the reasons hereabove set out, and for errors of the Court in taking from the

jury the issue of negligence, contributary negligence and maintenance and cure, and because the verdict is shocking to the Court, grossly excessive and contrary to the evidence, the verdict of the jury and the judgment entered thereon is set aside and defendant granted a new trial on all issues.